19020

J. B. MORRIS, Jr. and Thomas H. Burton, Appellants, v. Fred D.
TOWNSEND, Respondent.

(172 S. E. (2d) 819)

*Messrs. Kneece & Kneece,* of Columbia, *for Appellants,*

*Messrs. Townsend & Townsend,* and *Going & Going,* of Columbia, *for Respondent,*

March 2, 1970.

LITTLEJOHN, Justice:

This equity action was commenced by plaintiffs (who are appellants), seeking a permanent injunction to compel the defendant (who is the respondent) to remove a no trespassing sign posted on his property, which plaintiffs allege was causing irreparable damages to them. The complaint alleges that the plaintiffs own 18 acres of land adjacent to and extending into a lake which plaintiffs are entitled to use in a manner not inconsistent with the use of the lake by the defendant, who built it. It alleges that the sign is misleading and conveys the idea to plaintiffs' tenants of a mobile home

park that the defendant is the sole owner of the lake and that no one else is entitled to use the same.

The answer is first a general denial, and secondly defendant counterclaims, alleging that he built the dam which created the lake at his own expense and has the sole right to the use and control of the lake. The counterclaim alleges further that the defendant owns an easement in perpetuity to impound waters and submerge and flood plaintiff's lands covered by lake waters.

It is also alleged in the counterclaim that plaintiffs are violating conditions and restrictions imposed upon a parcel of their own lands, and are wrongfully collecting surface water and casting it in concentrated form upon defendant's property and lake. The prayer for relief asks (1) that the complaint be dismissed; (2) that the plaintiffs, their tenants, lessees, patrons, invitees and guests be permanently enjoined from entering upon, trespassing or making use whatsoever of the defendant's land or the waters of his lake; (3) that the plaintiffs, their tenants, lessees, patrons, invitees and guests be permanently enjoined from violating the conditions and restrictions imposed upon their own lands; (4) that the plaintiffs, their servants and agents, be permanently enjoined from collecting surface waters and casting same in concentrated form upon defendant's property and into his lake, or committing a nuisance thereabout.

The reply of the plaintiffs is a general denial of the counterclaim and asks that the counterclaim be dismissed.

The case was heard by the Master in Equity for Richland County, who, after taking testimony, recommended that the complaint be dismissed and that the relief sought in the counterclaim be granted. Exceptions were taken to the master's report and the trial judge dismissed the same, adopting the master's report in toto. The plaintiffs appeal from such order.

The facts in the case are not greatly in dispute. The defendant accumulated over a period of years approximately

200 acres of land along both sides of the bed of Big Jackson Creek in Richland County. In 1963 he built a dam costing about $30,000 at his own expense and brought into being a lake covering approximately 55 acres. The height of the dam built by the defendant caused the lake waters to cover his own lands plus between 1 and 2 acres of the adjoining 18 acre tract acquired by plaintiffs on June 17, 1967.

It is beyond dispute that on June 7, 1967 the defendant acquired an easement to flood and submerge and impound waters in perpetuity upon the lands now acquired and owned by the plaintiffs to the extent and at the level afforded by the dam as it existed at that time. There was reserved to plaintiffs' predecessors in title and in turn to the plaintiffs, "the right at any time without notice to reclaim said land from inundation by filling in the same or by any other appropriate means, in which event the right and easement hereby granted shall terminate as to the lands so reclaimed."

The plaintiffs with full knowledge of the easement, took title to the 18 acre tract adjoining that of defendant, with 1 to 2 acres covered by waters of the lake.

After plaintiffs acquired title to the 18 acre tract they began development of a 60 unit mobile home trailer park and advertised extensively that the lake was available for the use of their tenants. Their tenants, guests and others, commenced using the lake for swimming, fishing and recreational purposes. It was then that the defendant erected the no trespassing sign which brought about the filing of the complaint in this action.

One parcel of plaintiffs' land, referred to as Parcel B, containing 1.1 acres and not covered by water, is restricted by deed from defendant as follows:

"(1) That said property shall be used for residential purposes only, and no trailer, mobile home, tent, basement or shack shall be placed, located or used thereon.

"(2) That no sanitary sewage, kitchen waste, or the effluent therefrom shall be discharged on said property

within 35 feet of the adjacent lake either on surface or underground, nor shall anything be done or permitted on said premises or any part thereof which will constitute a nuisance or contaminate the waters of the adjacent lake.

"(3) The grantor reserves the right unto himself, his heirs and assigns in perpetuity to impound water upon and flood that portion of the within described premises which may be subject to flood from abnormally high waters of the adjacent lake as now constructed by dam across Big Jackson Creek along Windsor Lake Boulevard, said County and State, property of the grantor herein.

"(4) These restrictions are made for the benefit of the grantor only, who reserves the right to modify or release the same at will."

Defendant alleges that the plaintiffs have violated this restriction by permitting and encouraging on this parcel of land cooking, picknicking, games and other recreational uses by trailer park lessees, tenants and patrons of the plaintiffs.

The first question raised by appellants as stated in their brief is as follows:

"1. Did His Honor, Judge Mason, err in enjoining and restraining the Appellants from making use of the water either above the property owned by the Appellants or above the property owned by the Respondent?

This question must be answered in two parts. We first determine the alleged right of the plaintiffs to use the water of defendant's lake above defendant's land. One not a ripairian owner (as the plaintiffs here), but seeking to make use of waters of a lake created by the dam of another, must base his claim upon a right acquired through prescription or grant. Prescriptive rights in the plaintiffs are not here involved since the lake itself was not brought into being until 1963. No grant of easement in favor of the plaintiffs or their predecessors in title has been produced in evidence as a basis for their claim. The defend-

ant, at his own expense, constructed the lake and as sole ripairian owner impounded water available only to him. In the process a relatively insignificant portion of land, described in argument of counsel as between 1 and 2 acres, was inundated.

There are three instruments, all dated June 7, 1967, involved in the creation of the easement in favor of the defendant. Two of them are deeds from plaintiffs' predecessors in title, and each of them confers rights upon the defendant to flood and submerge the land involved. The third is a deed from the defendant to plaintiffs' predecessors in title conveying land but reserving to the defendant the right to flood and submerge land (Parcel B containing 1.1 acres) now owned by the plaintiffs. From a study of these instruments we find nothing contained therein indicating an intent on the part of the grantors or of the grantee that rights to control his lake be surrendered by the defendant. The language is not uncertain or ambiguous in any respect, and is certainly not subject to an interpretation that the defendant meant to grant rights in the lake, or that plaintiffs' predecessors in title intended to receive rights growing out of these instruments. By virtue of the express conveyances of plaintiffs' predecessors in title to the defendant of the right to flood certain portions of the land now owned by the plaintiffs, the land of the defendant became a dominant estate which attached to and became appurtenant to his lands. The land now owned by plaintiffs therefore became a servient estate. The defendant granted no rights with respect to his property which could appertain to plaintiffs' lands. We conclude that the defendant, as owner in fee simple of his land, clearly has the exclusive right to use and control that part of the lake which lies above his own land, and has the right to exclude plaintiffs and all other persons claiming by, under or through them, from any use whatsoever of the defendant's lands and water above said lands.

There is next involved the question concerning the relative rights to the use of the waters of defendant's lake over-

lying the comparatively small portions of land owned by the plaintiffs.

An easement has been defined "a right which one person has to use the land of another for a specific purpose not inconsistent with a general property in the owner, or as a servitude imposed as a burden on land." 25 Am. Jur. 416 Easements § 1 (1966). An easement gives no title to the land on which the servitude is imposed. It is, however, property or an interest in the land. The conveyances here involved give to the defendant an interest in the land which plaintiffs own. The instruments did not convey to the plaintiffs any interest in or privilege to use the water of defendant's lake.

If a railroad company acquires an easement to lay tracks and to operate a railroad across land it would hardly be argued that the landowner was privileged to use the train. If a telephone company acquired an easement to erect poles and wires for the transmittal of telephone messages it would hardly be argued that the landowner acquired the right to connect a telephone. By a like token, in this case the defendant acquired an easement to extend the waters of his lake onto the property of the adjoining landowners, and it cannot be logically argued that the landowners have acquired the right to use of the water and the lake it composes for their own benefit. The gist of the creation of the easement in this case is in order that the defendant may have and operate his own lake. He acquired an interest in plaintiffs' land; the plaintiffs have acquired no interest in defendant's water. If in these examples cited the landowner is to acquire an interest in the railroad track or in the telephone lines or in the lake waters, the rights would have to appear in the instruments creating the easements.

It is also of significance that the plaintiffs' predecessors in title reserved unto themselves, their heirs and assigns, the right to reclaim such land by filling in or other appropriate means. This express reservation tends to

negate any additional rights expressly or impliedly reserved.

While it is true that plaintiffs may use their land for any purpose not inconsistent with the rights acquired by the defendant, such does not include the right to use the lake and its waters which came into being solely by reason of the fact that the defendant, at his own expense, built the dam. Except for the dam, which defendant may maintain or remove, water would not approach plaintiffs' land and no riparian rights are here involved.

Reference has been made to the fact that the defendant by deed restricted Parcel B (containing 1.1 acres) before the same was acquired by the plaintiffs. The master has found, and the trial judge concurred, that this parcel does not adjoin defendant's lake but is approximately 5 feet therefrom. Accordingly, no part of this parcel touches the lake waters. It is not inundated, though defendant has an easement to submerge. We consider this 1.1 acre parcel only so far as the next questions raised by plaintiffs are concerned. These related issues are as follows: "Did His Honor, Judge Mason, err in ruling that the Appellants (plaintiffs) had violated the restricted covenants imposed upon Parcel B" * * * and * * * "in enjoining and restricting the Appellants (plaintiffs) from using Parcel B as a picnic area or recreation area?"

Of the 18 acres owned by the plaintiffs the restriction applies to only 1.1 acres. A 60 unit trailer—mobile home park has been developed on this 18 acre tract. Plaintiffs have advertised the use of the lake in order to attract tenants. In connection with the development plaintiffs have also advertised a 3 acre recreational park for sports, family cookouts, picnics, swimming and fishing. The 1.1 acre tract is a part of the 3 acre recreational area. No trailers, mobile homes or shacks, as forbidden in the restriction, have been erected on this restricted area, but plaintiffs' tenants of the mobile home park (which is a commercial operation designed to earn a profit) have been using it for picknicking, cooking out, parking, and similar activities.

Plaintiffs in this appeal argue that such use is for "residential purposes" as contemplated and permitted in the restriction. The restricted lot is not rented to any one tenant, and is outside the boundary of the individual spaces whereon the tenants park mobile units. This restricted parcel is available to all occupants (as many as 60)' and we agree with the conclusion of the master and of the trial judge that plaintiffs are making a commercial use of this property in violation of the restrictive covenants. We find no error in the lower court's disposition of these issues. See *Baltz, Inc. v. R. V. Chandler & Co.,* 248 S. C. 484, 151 S. E. (2d) 441 (1966).

The last error alleged by plaintiffs is stated in their brief as follows:

"Did His Honor, Judge Mason, err in restraining Appellants (plaintiffs) from collecting surface water in a concentrated form in storm drains?"

The master has made a finding, concurred in by the trial judge, as follows:

"The testimony in this case clearly shows that the plaintiff's drainage system constructed upon their property collects surface waters on a large portion of their property and by artificial means discharges the same in concentrated form into defendant's lake."

This court has held in *Dargan v. Graves,* S. C. 168 S. E. (2d) 306 (1969), that on appeal this court would not disturb such finding unless the same is without evidentiary support or against the clear preponderance of the evidence.

Surface water is a common enemy and a landowner may usually deal with it is he sees fit, but there are exceptions to the rule and one may not collect surface waters into an artificial channel and cast it on another in concentrated form. *Fairey v. Southern Ry. Co.,* 162 S. C. 129, 160 S. E. 274 (1931).

The lower courts finding that surface waters have been collected by artificial means and discharged in concentrated form into the lake is abundantly supported by the record and we find no error.

There is in the lake a small island, agreed by counsel in argument to be about the size of the Supreme Court Room. The property line dividing plaintiffs' land and defendant's land runs across this island such that the plaintiffs own about one-third of it and the defendant owns about two-thirds of it. Although no exception is before us relative to the right of the plaintiffs to use their portion of this island, the matter came before the court in oral argument and defendant's counsel stipulated that there would be no objection on the part of the defendant to plaintiffs' using the lake to reach their portion of the island. Accordingly, the lower court may issue such order as is necessary to settle any possible dispute relative to the island based on the stipulation in open court.

Let the order of the lower court be

Affirmed.

Moss, C. J., and LEWIS and BUSSEY, JJ., concur.

BRAILSFORD, J., dissents in part.

BRAILSFORD, J. (dissenting in part) :

I respectfully dissent from the conclusion that Mr. Townsend, by virtue of his ownership of a flowage easement, has the exclusive right to the use of that portion of the lake which lies above appellants' land. As owners of the fee, they have the right to use this portion of the lake bed, including the water upon it, in any manner not inconsistent with the easement. In my view, a reasonable use by the owners of the fee of that part of the lake lying upon their land for recreational purposes is not incompatible with the enjoyment of the easement. See *Great Hill Lake, Inc. v. Caswell,* 126 Conn. 364, 11 A. (2d) 396; *Gager v. Carlson,* 146 Conn. 288, 150 A. (2d) 302. However, I do not disagree with the conclusion of the master that appellants' attempted commercial use of the lake would be inconsistent therewith and should be enjoined. In other respect I concur in the opinion.