1238

Richard E. JACOBS, David H. Jacobs, Dominic A. Visconsi, R. F. Coffin, Edward H. Crane, and Anthony W. Weigand, co-partners doing business under the partnership firm name and style of JVJ Columbia Joint Venture, and Alan B. Kahn, individually and as custodian for Kevin A. Kahn, Monique B. Kahn, and Charles B. Kahn, Stadium Realty Corporation, Warehouses, Inc., and S-R Chas., Inc., co-partners doing business under the partnership firm name and style of Kahn Joint Venture, JVJ Columbia Joint Venture and Kahn Joint Venture being co-partners doing business under the partnership firm name and style of Columbia Joint Venture, Appellants v. SERVICE MERCHANDISE COMPANY, INC., Fortune Masingill Parish Development Corporation, The South Carolina National Bank as Executor and Trustee under Will of Judson B. Smith, Deceased, and L. W. Smith, III, F. D. Windham, and Henry Dent Smith as Trustees of the L. W. Smith, Jr., Trust, Respondents.

(375 S. E. (2d) 1)

Court of Appeals

124

*William C. Stork, Robert E. Salane* and *R. Lewis Johnson,* of *Barnes, Stork and Johnson,* Columbia, *for appellants.*

*Julius W. McKay,* and *Theodore B. Guerard,* of *Haynsworth, Marion, McKay & Guerard,* Columbia, *for respondents.*

Heard Sept. 21, 1988.

Decided Oct. 31, 1988.

CURETON, Judge:

Appellants commenced this action pursuant to the Uniform Declaratory Judgment Act seeking a declaration of the parties' rights under a written easement agreement. Appellants asked the court to declare that the road easement granted in the agreement was intended to benefit only Respondent-Smith's property to the exclusion of adjacent property known as the Snyder tract. Respondents deny the

property is so restricted. They also assert the appellants have dedicated the easement to public use and are estopped to deny the Snyder Tract access to the road easement. From an order of the circuit court holding access to the road was not restricted in the manner suggested by appellants, this appeal followed. We affirm.

The appellants are partners doing business as Columbia Joint Ventures, a general partnership which developed a regional shopping center in Richland County known as Columbia Mall. Respondent-Service Merchandise is successor in interest to both a 3 acre tract (Snyder Tract) formerly owned by Snyder and an adjacent 5 acre tract formerly owned by the Smith Tract. Respondent-Fortune Masingill Parish Development Corporation has contracted to purchase from the Smith Trust a 19 acre tract adjacent to both Columbia Mall and the 8 acres owned by Service Merchandise. Service Merchandise and Fortune Masingill plan to build a shopping center on this property and intend to access the road (Ring Road) at a point referred to as Access Point No. 2. For purposes of this appeal, the Appellants will be designated as Columbia and the Respondents as Smith.

Ring Road is located entirely upon land owned by Columbia except for that portion located within the "Developer Easement Parcel" owned by Smith. The road encircles Columbia Mall and is maintained by Columbia. The portion of Ring Road which includes Access Point No. 2 is part of the property to be conveyed by Smith to Fortune Masingill.

In order to develop Ring Road, Columbia contacted landowners abutting the proposed new road, including Smith and Snyder, and obtained their permission to close portions of certain public streets which were being used by Smith, Snyder and the other abutting landowners as access to nearby main traffic arteries. Having obtained their consent, Columbia petitioned Richland County Council to close these streets. In consideration of Richland County agreeing to close and convey its interest in these streets, Columbia agreed to permit the public to use Ring Road "at all times" and agreed it would not close Ring Road without Richland County's approval.

By written stipulation, the parties agreed the public has a right to use Ring Road. They also stipulated in the State-

ment of the Case that the "portion of the Smith Property which is covered by Ring Road is designated in the Easement Agreement as the Developer Easement Parcel and Ring Road Easement." Additionally, Columbia has not excepted to the trial judge's ruling that the Ring Road is now "used by the general public both to access Columbia Mall and as a through road."

Paragraphs 1 and 6 of the Easement Agreement are at the heart of this controversy. Paragraph 1 provides:

> 1. Smith hereby grants to Columbia, its successors and assigns, for the benefit of the Columbia Property and any other property presently owned or hereafter acquired by Columbia which is contiguous to any portion of the Columbia Property, the perpetual, exclusive right, privilege and easement over a strip of land fifty (50) feet in width, which strip of land is designated and shown on Exhibit A-2 as "Developer Easement Parcel" and is more fully described on Exhibit D, attached hereto and made a part hereof, and is hereinafter referred to as the "Ring Road Easement," to construct, maintain, repair and replace a roadway (not less than forty (40) feet in pavement width) in the approximate location designated for the "Shopping Center Ring Road," as shown on Exhibit A, together with such slopes, curb and gutter and other ancillary improvements as Columbia may deem necessary, and subject to Paragraph 6 hereof, to use such roadway for pedestrian and vehicular traffic.

Paragraph 6 of the Agreement purports to convey back to Smith a non-exclusive easement to use all of Ring Road, including that portion of the road which covers the Developer Easement Parcel, the fee of which is owned by Smith. Paragraph 6 of the Agreement states the easement to Smith is given for the "purpose of providing ingress and egress from the Smith Property only at Access Point Nos. 1 and 2. . . ." The paragraph also grants Smith the right to install curbs on Ring Road at Access Points 1 and 2. The paragraph ends by stating "[t]he foregoing rights, privileges and easements shall be used by Smith, his legal representatives and assigns, in common with Columbia, its tenants, invitees, successors and assigns."

The trial judge concluded Smith, as holder of the fee to the Developer Easement Parcel, could not also hold a lesser estate of a non-exclusive easement to use the property. He thus held that regardless of the Agreement's language, the effect of the Agreement was that Smith granted to Columbia a non-exclusive easement to construct, use, and maintain a road upon the Developer Easement Parcel and reserved unto itself the right to use the property over which the easement lies. The trial judge also held Ring Road had been dedicated to public use and, that as a member of the public, Smith and the owner of the Snyder Tract had the right to enjoy unrestricted access to Ring Road. Finally, he rejected Columbia's contention the width of the pavement within Access Point No. 2 curb cut is limited to forty (40) feet and held Smith could pave the road to a width of fifty (50) feet.

The issues raised in this appeal are whether (1) Columbia may restrict use of Access Point No. 2 so that owners of the Snyder Tract may not access Ring Road through Access Point No. 2, (2) Smith may pave the roadway in the Access Point to a width in excess of forty (40) feet, and (3) the lower court erred in filing its amended order after Columbia served and filed its Notice of Intent to Appeal from the first order.

Before we consider the arguments in this case, we must determine our scope of review. Columbia argues this is an action at law. We agree. The character of an action is determined by the main purpose of the complaint. *Alford v. Martin*, 176 S. C. 207, 180 S. E. 13 (1935). An action which is essentially one at law is not converted into an equitable action because it is brought pursuant to the Declaratory Judgment Act. *See Legette v. Smith*, 226 S. C. 403, 85 S. E. (2d) 576 (1955); Section 15-53-90, Code of Laws of South Carolina, 1976. An action to construe a written unambiguous contract is an action at law. *Texcon, Inc. v. Anderson Aviation, Inc.*, 284 S. C. 307, 326 S. E. (2d) 168 (Ct. App. 1985); *J. T. M. Co., Inc. v. Vane*, 283 S. C. 512, 323 S. E. (2d) 794 (Ct. App. 1984). Additional rules governing the construction of contracts are stated in the case of *Gamble, Givens & Moody v. Moise*, 288 S. C. 210, 341 S. E. (2d) 147 (Ct. App. 1986), as follows:

> In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties. *Williams v. Teran, Inc.*, 266 S. C. 55, 221 S. E. (2d) 526 (1976); *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439 (1962). The parties' intention must, in the first instance, be derived from the language of the contract. *Superior Automobile Insurance Co. v. Maners*, 261 S. C. 257, 199 S. E. (2d) 719 (1973). If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect. *Blakeley v. Rabon*, 266 S. C. 68, 221 S. E. (2d) 767 (1976); *Fryar v. Currin*, 280 S. C. 241, 312 S. E. (2d) 16 (Ct. App. 1984). Mere lack of clarity on casual reading is not the standard for determining whether a contract is afflicted with ambiguity. *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 34 S. E. (2d) 839 (1945).

*Id.* at 215, 341 S. E. (2d) at 150.

Columbia first argues the trial court misconstrues the easement agreement to provide that it does not have an exclusive easement in the Developer Easement Parcel. It urges the proper construction of the Easement Agreement is that Columbia and Smith created reciprocal, appurtenant easements in Ring Road by express grant. It further argues the appurtenant easement it granted Smith benefited only the property Smith retained at the time of the execution of the Agreement and cannot now be extended to benefit the adjacent Snyder Tract.

We disagree with Columbia's characterization of the easement. As defined by our Supreme Court, an appurtenant easement must "inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof. It attaches to, and passes with the dominant tenement as an appurtenance thereof." *Steele v. Williams*, 204 S. C. 124, 130, 28 S. E. (2d) 644, 647 (1944). An easement is the right which one has to use the land of another for a specific purpose. *Id.* at 132, 28 S. E. (2d) at 647; 28 C. J. S. *Easements* Section 1 (1941).

An owner of land may by reservation in a deed of conveyance create an easement in the land conveyed which is "equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands." *Sandy Island Corp. v. Ragsdale*, 246 S. C. 414, 419, 143 S. E. (2d) 803, 806 (1965). Although our case law is scant, it is implicit that the grantor of the easement must also own the fee. *See Douglas v. Medical Investors, Inc.*, 256 S. C. 440, 182 S. E. (2d) 720 (1971); *Morris v. Townsend*, 253 S. C. 628, 172 S. E. (2d) 819 (1970); 28 C. J. S. *Easements* Section 1 at 623 (1941) (an easement is distinct from the ownership of the land to which it is attached, and it "necessarily follows that a man cannot have an easement in his own lands.") Hence, the trial judge was correct in holding that Columbia's right to use the Developer Easement Parcel was not exclusive but was a right shared with Smith, the owner of the fee.

Columbia vigorously contends the legal rights of the parties to this suit must be determined solely by the terms of the 1975 Easement Agreement. We reject this thesis. At the time Smith and Columbia entered into the Easement Agreement, Columbia had already agreed with Richland County that in exchange for closing certain roads, it would construct a roadway system which would at all times be open to the public and would not be closed without the consent of County Council. Thus, the Easement Agreement could not affect the rights of the public to use Ring Road upon its completion. Therefore, the rights of the parties are controlled by both the Easement Agreement and the agreement between Columbia and County Council.

We think much of Columbia's argument relative to construction of the Easement Agreement is irrelevant as it pertains to the right of the Snyder property to use the Developer Easement Parcel. Columbia admits the owner of the Snyder Tract, as a member of the public, has the right to use Ring Road including that portion of the road located within the Developer Easement Parcel. The question then becomes whether the Easement Agreement restricts the use of Access Point No. 2 to users of the Smith property only. Paragraph 6 of the Easement Agreement grants to Smith the following right:

[T]he right to construct, maintain, repair and replace curb cuts on the Shopping Center Ring Road within the Access Road Easement at Access Points Nos. 1 and 2, as shown on Exhibit A, for connector roads and access to the Smith Property.

Conceding for the sake of argument that the Easement Agreement precludes Smith from granting to anyone other than its successor the right to use the Developer Easement Parcel, we do not construe the agreement to in any way restrict the use of the roadway (Smith Roadway) leading from the Smith property to Access Point No. 2.

The finite boundary line between the end of the Smith Roadway and the beginning of the Developer Easement Parcel precludes the argument that there is an area between the end of the Smith Roadway and the beginning of the Developer Easement Parcel which may be restricted. As we view the legal status of the owner of the Snyder Tract, it has the right to use both the Developer Easement Parcel and the Smith Roadway.[1] It seems clear that the quoted provision was only intended to grant to Smith the right to cut the curb along the edge of the Developer Easement Parcel (Ring Road) and install curbs on either side of the Smith Roadway.

Easements restricting the use of property must be created in express terms or by plain and unmistakable implication. *Butler v. Sea Pines Plantation Co.,* 282 S. C. 113, 317 S. E. (2d) 464 (Ct. App. 1984). We find no express covenant that restricts the use of the access point to only users of the Smith property, nor is such restriction evident by plain and unmistakable implication.

We next consider Columbia's argument the Easement Agreement restricted the width of the paving in Access Point No. 2 to not more than 40 feet. Columbia bases its contention on a plat which is incorporated by reference into Easement Agreement. It claims the plat shows a fifty-foot right-of-way opening and dotted lines within the right-of-way which indicate a forty-foot pave-

---

[1] The Smith Roadway by virtue of a grant from Smith and the Easement Parcel by virtue of Columbia's agreement with the County.

ment width. In reference to these markings, the trial judge found:

> The Easement Agreement [text] is silent as to the width of the roadway to be constructed within the Access Point No. 2 curb cut. In the absence of any express restrictions as to the width of this roadway, there is no reason for the Court to construe the forty-foot designation shown on the plat as somehow limiting the width of the right-of-way. The easement over the Developer Easement Parcel allows for a right-of-way of fifty feet in width, with a minimum pavement of forty-feet (Agreement, Section 1). Access Point No. 1 provides for a maximum sixty-six foot roadway, but is silent as to the minimum pavement (The plat, however, also shows dotted lines within Access Point No. 1 forty feet apart within right-of-way). With regard to Access Point No. 2, the Agreement is silent to both the width of the right-of-way and the minimum pavement, but the plat shows a fifty-foot right-of-way. Nowhere in the Agreement is a maximum pavement, less than the right-of-way, provided for any of the roadways.

We agree with the trial judge the Agreement does not clearly express the intention of the parties that the width of the pavement within the Smith Roadway at its intersection with Ring Road shall not exceed forty feet (40). We note first the plat referred to as Exhibit A-2 in the Easement Agreement apparently differs from a plat marked "Exhibit A-2" which was furnished to us on appeal. The Exhibit A-2 furnished us shows neither Access Point No. 2 nor the markings about which Columbia argues.[2] A restriction on the use of property must be created in express terms or by plain and unmistakable implication. *Edwards v. Surratt*, 228 S. C. 512, 90 S. E. (2d) 906 (1956). "[I]n the interpretation of maps and plats intention will not be inferred from symbols of uncer-

---

[2] We assume, however, that a drawing (site plan) marked Exhibit 6 which is part of the record on appeal contains the markings Columbia wishes to bring to our attention. If so, we observe several dotted lines within the roadway area. While there is a double arrow between one set of dotted lines and the notation 40 feet, there is no indication the 40 foot notation represents the width of the pavement within the curbs at Access Point No. 2.

tain meaning or from fanciful adornments on the plat...."
*Hamilton v. CCM, Inc.*, 274 S. C. 152, 157, 263 S. E. (2d) 378, 380 (1980).

■ Columbia next argues the trial court committed reversible error in filing an amended order after the Notice of Intent to Appeal concerning the original order had been filed. Columbia was served with a copy of the first order on June 15, 1987. The next day Columbia filed a Notice of Intent to Appeal. The amended order was filed June 17, 1987. After the filing of a Notice of Intent to Appeal, the circuit court's jurisdiction over the appealed order extended only to correction of clerical errors. S. C. R. Civ. P. 60(a). Columbia claims the amendment does more than correct a clerical error. We disagree. The trial court clearly states in the discussion portion of its first order that Smith was entitled to pave the roadway to the entire fifty foot width of Access Point No. 2. The amended order simply clarified this conclusion by placing it in the decretal portion of the order. We find Columbia's argument on this point devoid of merit.

Finally, Smith argues as an additional sustaining ground Columbia by its actions in dedicating Ring Road and inducing the Smiths, Snyders, and Richland County to consent to closing certain public roads which provided access to the Smith and Snyder properties is now estopped to deny Snyder right of access to Ring Road. Under the facts developed in the record on appeal, we find insufficient basis to affirm on that ground. We also find it unnecessary to reach the issue of whether or not Ring Road was dedicated to public use.

Affirmed.

SHAW and BELL, JJ., concur.