479 S.E.2d 510

**WILDER CORPORATION f/k/a Wilder
Mobile Homes, Inc., Appellant,**

v.

**Klaus WILKE and Rita E. Wilke, Respondents.**

No. 2589.

Court of Appeals of South Carolina.

Heard Oct. 8, 1996.
Decided Nov. 4, 1996.
Rehearing Denied Jan. 3, 1997.

572

William H. Short, Jr., and John F. Emerson, Columbia, for appellant.

Edward M. Woodward, Jr., and John A. Pincelli, both of Woodard, Leventis, Unger, Daves, Herndon & Cothran, Columbia, for respondents.

CURETON, Judge.

In this action, Wilder Corporation ("Wilder") seeks foreclosure of a bond for title executed by Klaus and Rita Wilke ("the Wilkes"). Wilder appeals the master's calculation of the amount due under the bond for title as well as the master's resolution of the issues at the hearing. We affirm in part, reverse in part, and remand.

## I. *Facts*

In 1979, the Wilkes and Wilder agreed that Wilder would exchange the McGregor Downs mobile home park in Lexing-

ton, South Carolina, for the Wilkes' motel in Florida and $635,000. On January 25, 1980, the parties signed a bond for title memorializing the agreement and the $635,000 debt. The bond for title provided for monthly payments of $5,658.80 to commence on March 1, 1980, and to continue until February 1, 1995, when a balloon payment of the remaining balance would be due. However, the first twenty payments under the obligation were to be reduced by $500 to $5158.80. The bond for title further provided for deferral of a maximum of three months' successive payments in the event occupancy at the mobile home park fell below 152 spaces. The Wilkes also were allowed to pay and setoff penalties assessed by the South Carolina Department of Health and Environmental Control ("DHEC") for the on-site sewage facility, if connection with the town of Springdale's sewage facility was not completed and Wilder failed to pay DHEC's penalties. Finally, the bond for title allowed the parties to setoff or add any claims or judgments arising under the terms of the agreement.

Wilder took possession of the Florida motel in 1979, and the Wilkes took possession of the mobile home park on January 28, 1980. However, shortly after the Wilkes took possession, the parties executed a modification agreement because they discovered inaccuracies in the mobile home park's monthly operating statement as well as additional difficulties with DHEC. The agreement provided, *inter alia*, that Wilder would pay the Wilkes $6,000 and that the bond for title would be reduced by $500 a payment for the first twenty payments.

Payment on the bond for title began on March 1, 1980. The first twenty payments were paid at the reduced rate of $5,158.80 except for the September 1980 payment, which was less due to a setoff for repair of malfunctioning equipment. After the reduced payment period ended in October 1981, payment continued at the normal monthly rate of $5,658.80 until 1990, when Wilder filed a foreclosure suit against the Wilkes over an amount that the Wilkes refused to pay because they claimed they were entitled to a setoff for DHEC fines. Wilder dismissed the suit and allowed the Wilkes to setoff the amount over three successive months in mid–1990. In 1994, the parties engaged in federal court litigation over the bond for title, which resulted in a judgment against Wilder for $146,584.72. Despite these disagreements, the Wilkes contin-

ued to pay the full monthly amount through January 1995, except that in 1991 they deferred three payments under the bond for title due to low occupancy. After the Wilkes made the final monthly payment in January 1995, Wilder sent the Wilkes a demand letter requesting $512,557.61 for the balloon payment due February 1, 1995. The parties evidently could not agree on the balloon payment, and Wilder filed its foreclosure action on March 30, 1995. Subsequent to the filing of the foreclosure action, the Wilkes paid $281,000 to Wilder's attorneys pursuant to a Motion for Appointment of a Receiver. The Wilkes asserted in their answer that the balloon payment only totalled $280,990.33, which they claimed to have offered on February 1, 1995.

The hearing was conducted in front of a Master-in-Equity on July 6, 1995. At trial, Wilder produced two witnesses. Wilder's first witness, an employee named Thomas Merrell, testified that despite the funds paid to the receiver, the Wilkes still owed approximately $238,054. Merrell produced demand letters and an amortization schedule that Wilder sent to the Wilkes, all of which reflected Wilder's view on the amortization of the loan and the amount of the balloon payment. Merrell noted that while the Wilkes would occasionally call and ask for the balance on the loan, he never received any particular response to any of these communications. Merrell testified that the bond for title provision which reduced payments over the first twenty installments only served to allow interest-only payments and did not reduce the principal. However, Merrell admitted that the reduced payments were short of the monthly interest on the entire principal by 58 cents. Finally, Merrell stated that he had not credited the Wilkes for the amount of the federal court judgment.

Jerry Tennyson, a former employee, also testified for Wilder. Tennyson testified that the payment reduction provision did not result in forgiveness of principal, and that such a provision was common in loans to help the debtor with initial cash flow.

The Wilkes did not call their accountant as a witness because Wilder stipulated to the arithmetic in the Wilkes' loan amortization schedule, which was introduced into evidence. However, the Wilkes both testified at the hearing. Mrs.

Wilke's testimony concerned the setoff for the machinery repair. Mr. Wilke, on the other hand, testified that since Wilder was unable to perform at the beginning of the agreement, the parties intended the $500 per month payment reduction in the modification agreement to operate as a credit for $10,000. Mr. Wilke further stated that the $10,000 credit was structured as a $500 per month payment reduction both to help his cash flow and to avoid requiring Wilder to obtain $10,000 in cash.

The master ruled in favor of the Wilkes on both the judgment setoff and the effect of the $500 payment reduction, and he adopted the Wilkes' proposed order without change. Wilder now appeals, arguing that (1) the master's order is flawed because it adopted inaccuracies in the Wilkes' loan amortization schedule, (2) the master's order contained other factual errors and irregularities, (3) the master erroneously allowed the Wilkes to setoff the federal court judgment, and (4) the master incorrectly ruled that the $500 reduction in the first twenty payments operated as a credit against principal.

## II. *Standard Of Review*

▇▇▇▇ Wilke asserts that Wilder's action is actually one at law to collect upon a promissory note. The main issues at the hearing concerned interpreting the bond for title in order to calculate whether the Wilkes were in default on any amount due. *See Jacobs v. Service Merchandise Co.*, 297 S.C. 123, 375 S.E.2d 1 (Ct.App.1988) (noting that an action to construe an unambiguous written contract is one at law). However, the main purpose of Wilder's complaint was foreclosure of the bond for title. *Cf. Jacobs*, 297 S.C. at 127, 375 S.E.2d at 3. *See also Insurance Fin. Servs., Inc. v. South Carolina Ins. Co.*, 271 S.C. 289, 247 S.E.2d 315 (1978) (main purpose rule). Actions for foreclosure or the cancellation of instruments are actions in equity.[1] *See Smith Cos. v. Hayes*, 311 S.C. 358, 360

---

1. Neither party raised the issue of whether Wilder's bond for title gave rise to an equitable mortgage subject to foreclosure, or whether Wilder should have sued to have the bond for title cancelled. *See Smith Cos. v. Hayes*, 311 S.C. 358, 360 nn. 1–2, 428 S.E.2d 900, 902 nn. 1–2 (Ct.App.1993). *See also Milbrandt v. Huber*, 149 Wis.2d 275, 440 N.W.2d 807, 811 (Wis.Ct.App.), *review denied by* 443 N.W.2d 311 (Wis.1989) (noting that "the relationship between [a] vendor [who retains legal title to secure purchase price] and [a] vendee in a land

n. 1, 428 S.E.2d 900, 902 n. 1 (Ct.App.1993). Further, a court of equity has jurisdiction over actions involving long and complicated accounts. *Cf. Jefferies v. Harvey*, 206 S.C. 245, 33 S.E.2d 513 (1945) (holding that an action is compulsorily referable to a master if it involves accounts so complicated as to make review by a jury impracticable). Thus, this action is properly characterized as one in equity.

■ Since a master heard this equitable action without appeal to the circuit court, we may find the facts on appeal in accordance with our own view of the preponderance of the evidence. *Townes Assoc., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). However, we will not disregard the findings of the master who saw and heard the witnesses and was in a better position to judge their credibility. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 391 S.E.2d 538 (1989).

### III. *Wilkes' Loan Amortization Schedule*

■ Wilder makes a number of arguments challenging the master's use of an allegedly inaccurate loan amortization schedule ("the Wilkes' schedule") to calculate the amount due on the bond for title. The Wilkes submitted the schedule at issue, which their accountant prepared. At trial, Wilder's attorney stipulated to the Wilkes' schedule as follows:

> As [the Wilkes' attorney] indicated, we have an objection to the theories considered by [the Wilkes' accountant] in doing the math, but we have no objection to the way he did the math. We presume that if your Honor rules and sustains the defendant's point on the theories, that the math will be correct.

Wilder's attorney then further explained his stipulation:

> Defendant's Exhibit number four is a mathematical run of payments with certain presumptions made on theories pro-

---

contract is analogous to that of equitable mortgagor and mortgagee; the mortgagor has an equity of redemption, the mortgagee the correlative right of foreclosure"); 59 C.J.S. *Mortgages* § 14(f) (1949) (noting that the intent of the parties will determine whether equity will treat a bond for title as a mortgage). *Cf. Halstead v. Windsor*, 662 So.2d 1124 (Ala.1995) (noting that the doctrine of equitable mortgage does not apply to bonds for title and that, pursuant to a bond for title, a vendee's action to enforce the equity of redemption is in reality a suit for specific performance). In any event, either action is properly within the court's equity jurisdiction and subject to the same standard of review.

pounded by [the Wilkes' attorney]. [The Wilkes'] accountant has run those numbers. And if [the Wilkes'] points are sustained by you, then [the Wilkes' accountant's] run of the numbers is accurate.

The Wilkes contend this stipulation bound Wilder to the accuracy of the Wilkes' schedule. We disagree. The purpose of this stipulation obviously was to avoid a tedious examination of the accountant on his calculations. Clearly, Wilder's attorney did not stipulate to the reliability of the Wilkes' assumptions in the schedule about proper amortization of the loan. Instead, Wilder merely stipulated that the Wilkes' accountant correctly added, subtracted, multiplied, and divided.

## A. Interest Accrual Date

Wilder first argues that the master erred in relying on the Wilkes' schedule to rule that interest did not begin to accrue on the loan until March 1, 1980, the date of the first payment. Thus, Wilder argues that the master further erred in accepting the premise of the Wilkes' schedule that the first payment went entirely to reduce principal, since under the Wilkes' view no interest had yet accrued. Wilder notes that no testimony, argument, or evidence supports the position that interest did not accrue until the first payment, and Wilder further argues that if interest did not begin to accrue until after the first payment, then the Wilkes would have enjoyed free possession of the mobile home park from January 28, 1980, until March 1, 1980. We agree with Wilder's contentions.

Wilder correctly cites the general rule that interest begins to accrue on a note at the date of signing unless the document specifies otherwise. *See Graham v. Burgiss*, 78 S.C. 404, 59 S.E. 29 (1907) (noting that "the rule is universally recognized that a contract to pay a certain sum with interest means interest is to run from the date of the contract"). Further, a fair reading of the bond for title implies that interest began accruing before the first payment. Pursuant to the document, the monthly installments were to include both principal and interest. The document only refers to March 1, 1980 as the date that these monthly installments were to commence, not as the date that interest was to commence.

Thus, the master erred in ruling that interest did not begin to accrue until March 1, 1980, and the master further erred in applying the first payment solely towards principal. *Cf. Fisher v. Carolina Door Prods., Inc.*, 286 S.C. 5, 331 S.E.2d 368 (Ct.App.1985) (ruling that a note which provided for payment of principal "plus interest on the unpaid balance" started accruing interest on the antedated date of signing). Accordingly, we remand for recalculation of amortization of the loan with interest accruing from the date of signing, January 25, 1980. Necessarily, this recalculation will result in an amortization schedule with entirely different figures.

## B. Deferred Payments

■ Wilder also challenges the master's adoption of the Wilkes' schedule because it credits the deferred payments as paid when due and then merely adds them to the balloon payment at the end of the schedule. Thus, Wilder contends it was deprived of interest that would have accrued on the deferred payments until the Wilkes made the balloon payment. The deferral provision in the Bond for Title reads as follows:

> [T]he [Wilkes] may defer the aforesaid monthly installment payments to [Wilder] for a period of not more than three (3) months for each and every occurrence that occupancies in the mobile home park as described above shall be less, due to circumstances beyond the control of the [Wilkes], than 152 spaces. Such deferred payment(s) shall be paid at the end of the term of this agreement as part of the balloon payment.

A deferral of a payment is a postponement of a payment to a future time. *Black's Law Dictionary* 421 (6th ed. 1990). Here, the parties agreed that the time of payment for the deferred payments would be extended until the due date of the balloon payment. Thus, the Wilkes' schedule properly amortizes the loan balance at the time of deferral and then adds to the balloon payment the total of the three deferred payments. If Wilder wished the balloon payment to have included accrued interest on the deferred payments from the time of deferral to the balloon payment due date, it should have included a statement to that effect in the deferral provision. *See Mishoe v. General Motors Acceptance Corp.*, 234

S.C. 182, 107 S.E.2d 43 (1958) (noting that the obligation to pay interest must rest upon an agreement, express or implied, to pay for the use of the money of another). *Cf. Sherman v. Woerner Magnolia Farms, Inc.*, 565 So.2d 601, 605–06 (Ala. 1990) (for an example of a moratorium in which the parties agreed that interest on the extended payments would accrue at a rate which was different than the original agreement). We note that South Carolina has followed from its oldest cases the rule that interest is allowed from the due date whenever a party agrees in writing to pay money on a certain day. *Robert E. Lee & Co. v. Commission of Public Works*, 248 S.C. 92, 149 S.E.2d 59 (1966) (citing *Ryan v. Baldrick*, 14 S.C.L. (3 McCord) 498 (1826)). Since the Wilkes promised to pay the deferred payments on the due date of the balloon payment, interest on the deferred payments only began to accrue under this rule as of the balloon payment date of February 1, 1995. Thus, the master properly applied the deferral provision in the bond for title.

## C. The Extra Payment

Wilder next contends that the master erred in adopting the Wilkes' schedule because it incorrectly reflects 180 payments when only 176 payments were made. However, the Wilkes correctly note that three payments were deferred in 1991 pursuant to the bond for title. The Wilkes' schedule reflects those payments as made during the loan but it adds them to the remaining balance at the end of the schedule. The Wilkes' list of payments, which the master admitted into evidence under a stipulation that it accurately reflected payments the Wilkes could prove, shows 175 payments. This list does not show payment in January 1995, but Wilder acknowledged and its witnesses testified that the Wilkes made the January 1995 payment. Thus, the Wilkes made or deferred only 179 payments if the total includes the January 1995 payment as well as the three deferred payments added to the remaining balance on the Wilkes' schedule. Consequently, the Wilkes' schedule reflects an 180th payment which has no support in the record. Obviously, giving credit to the Wilkes for an unmade payment not only would create error in the calculated amount but also would prejudice Wilder. *Cf. Gardner v. Gardner*, 253 S.C. 296, 170 S.E.2d 372 (1969). There-

fore, we remand for recalculation without credit for the extra payment listed in the Wilkes schedule.

## IV. *Miscellaneous Factual Errors*

 Wilder next argues that the master's order contains other factual irregularities which call its credibility into question. Wilder notes that the master's order incorrectly set forth both the date the parties executed the bond for title as well as the date Wilder filed the *lis pendens*. Further, the order misspelled Rita Wilke's name. Finally, the order lists March 1, 1995 as the date the balloon payment was due, instead of the actual due date of February 1, 1995. However, the order used the correct date of February 1, 1995 as the due date from which to calculate subsequently accruing interest on the balloon payment. Thus, we agree with the Wilkes that this error was harmless, as were the mistakes in dates or spelling. *See, e.g. National Grange Mut. Ins. Co. v. Firemen's Ins. Co.,* 310 S.C. 116, 425 S.E.2d 754 (Ct.App.1992).

## V. *Setoff Of The Federal Court Judgment*

 Wilder asserts that the master erred in allowing the Wilkes to setoff the federal court judgment against the debt remaining on the bond for title. First, Wilder contends that the master improperly setoff the judgment because the Wilkes never executed it and Wilder was appealing the judgment at the time of the hearing. Second, Wilder argues that the master should not have allowed the Wilkes to "retroactively" setoff the judgment as of its award date of July 12, 1994, because the Wilkes gave no notice of their intent to setoff the judgment amount until their answer to this action. We disagree with Wilder's contentions and hold that the master correctly interpreted the bond for title.

 The applicable provision in the bond for title provides that "... either party shall have the right to setoff or include additional indebtedness incurred to the property or the mortgage as a result of any claim, *judgment,* or misrepresentation which is a default under the terms of this agreement ..." (emphasis added). While both the Federal Rules of Civil Procedure as well as the South Carolina Rules of Civil Procedure require a writ of execution to enforce a judgment for the

payment of money, no authority defines execution of a judgment as an essential part of the judgment itself. Fed.R.Civ.P. 54, 69; Rules 54, 69, SCRCP. *See also Webster's New World Dictionary* 763 (2nd College ed. 1982). The fact that the judgment may be subject to a pending appeal does not make it any less of a judgment; it is axiomatic in all court systems that a judgment must be final before appeal may be sought. *See Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). *See also* Rule 72, SCRCP. Moreover, the record does not reflect that the judgment was stayed pending appeal. *Cf.* Fed.R.App.P. 8(a); Rule 225, SCACR. Thus, neither lack of execution nor appeal prevents setoff pursuant to the clear language of the bond for title.[2]

 Finally, the master correctly ruled that the Wilkes could setoff the judgment as of the award date of July 12, 1994. Wilder argues that allowing the Wilkes to setoff the judgment on its award date without notice conflicts with good bookkeeping policies and is grossly inequitable. While Wilder cites no authority for its arguments, we recognize that the law will imply consistent terms into a contract if reason, justice, honesty, or fairness would lead a court to believe that the parties omitted the implied terms. *See Southern Realty and Constr. Co. v. Bryan,* 290 S.C. 302, 311–12, 350 S.E.2d 194, 199 (Ct.App.1986). The bond for title does not expressly require notice in order for Wilkes to setoff a judgment, and we do not think a notice provision should be implied in this situation. Without doubt, Wilder had notice of the judgment against it, because it actively defended the lawsuit and appealed the judgment. It is more implicit in the contract that the Wilkes would setoff the judgment without hesitation against the large debt they owed Wilder.

 Finally, Wilder challenges the amount of setoff for the judgment in the Wilkes' schedule. The federal judgment on July 12, 1994, totalled $146,584.72, with post-judgment interest accruing at the rate of 5.31% per annum. In the Wilkes' schedule, the setoff for the judgment totalled $147,289.53. There is no explanation as to the difference in the amounts,

---

2. We note that the United States Court of Appeals for the Fourth Circuit has since affirmed the judgment against Wilder. *Wilke v. Wilder Corp.,* No. 94–2062, 1996 WL 7989 (4th Cir. January 8, 1996) (per curiam).

and the added amount could not reflect post-judgment interest because the setoff occurred on the judgment's award date before any interest could accrue. Allowing the Wilkes to setoff an additional $704.81 would clearly prejudice Wilder. *Cf. Gardner v. Gardner,* 253 S.C. 296, 170 S.E.2d 372 (1969). Thus, we remand for recalculation, and the master should only deduct the actual amount of the judgment as of July 12, 1994. Remaining interest and principal should be recalculated accordingly.

## VI. *Effect Of The Payment Reduction*

██ Wilder argues that the master erred in holding that the $500 reduction in the first twenty payments operated to abate the principal rather than merely to defer payments on principal. We disagree. The bond for title provided that "the first twenty (20) payments due . . . shall be reduced by the sum of $500 per payment." Conceivably, this provision could be properly interpreted as allowing interest-only payments for the first twenty months. However, the parties subsequently executed a modification agreement, which provided that "the Bond for Title *shall be reduced* by the sum of five hundred dollars ($500.00) per payment for the first (20) payments due under that obligation." (Emphasis ours). The modification agreement clearly differs from the bond for title in that the modification agreement states that the bond for title shall be reduced, rather than just the payments. Further, the parties executed the modification agreement after they realized that certain factors made the mobile home park less valuable to the Wilkes. Therefore, we hold that the master properly construed the provisions in the bond for title and modification agreement as Wilder's assent to crediting the Wilkes with a full payment during the reduction period.

## VII. *Conclusion*

In conclusion, we affirm the master's order except where it: (1) ruled that interest began to accrue on March 1, 1980, (2) applied the first payment entirely towards principal, (3) credited Wilkes with an additional payment, and (4) setoff a larger amount than deserved for the federal court judgment. Accordingly, we remand for recalculation on these issues.

For the foregoing reasons, the order of the master is

**AFFIRMED IN PART, REVERSED IN PART AND RE-MANDED.**

GOOLSBY and ANDERSON, JJ., concur.