## A98A0535. STANDARD FIRE INSURANCE COMPANY v. KENT & ASSOCIATES, INC.

(501 SE2d 858)

ANDREWS, Chief Judge.

Standard Fire Insurance Company (Standard) appeals from the trial court's order granting summary judgment to Kent & Associates, Inc. (Kent) on Standard's claim for indemnification, subrogation, and contribution as a result of problems at the Lake Lanier Islands wave pool. Kent argued in its motion for summary judgment that Standard's claims were barred by the Statute of Repose. For the reasons which follow, we agree and affirm.

This case arose when a large amount of chlorine was released into the wave pool at Lake Lanier Islands, resulting in numerous personal injury claims. The accident occurred because an interlock device that was called for in the project plans was not installed at the circulating pump starter. The purpose of the interlock device was to stop the injection of chlorine into the circulating system in the event that the circulating pump were to shut down.

Standard's insured, Foster & Cooper, was the general contractor hired to build the wave pool. They contracted with Kent to do all the electrical work for the project. The project manager for Foster & Cooper testified that it was his understanding that Kent was responsible also for installing the interlock device because it was shown on the electrical drawings, but this appears to have been a disputed issue.

The wave pool had been open to the public for over two years when, on July 10, 1990, the circulating pump shut down. Because there was no interlock device, the chlorinator continued to inject chlorine into the system. When the circulating pump was turned back on, this large buildup of chlorine was injected into the wave pool, injuring people who were in the pool at the time.

In its motion for summary judgment on Standard's claims for indemnification and contribution, Kent argued that since Standard did not file its claim until June 21, 1996, the claim is barred by the eight-year Statute of Repose. This statute, codified at OCGA § 9-3-51 (a), provides in pertinent part:

"No action to recover damages:

"(1) For any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property;

"(2) For injury to property, real or personal, arising out of any such deficiency; or

"(3) For injury to the person or for wrongful death arising out of any such deficiency
shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement." OCGA § 9-3-51 (a).

Standard does not dispute that the wave pool project was completed and turned over to Lake Lanier Islands prior to June 21, 1988. In addition, as Kent points out, claims for indemnification and contribution are among those contemplated by the Legislature when it enacted the statute. See *Gwinnett Place Assoc., L.P. v. Pharr Engineering*, 215 Ga. App. 53, 55 (449 SE2d 889) (1994); *Krasaeath v. Parker*, 212 Ga. App. 525 (441 SE2d 868) (1994).

1. Standard claims, however, that the Statute of Repose does not apply in this case because installation of an interlock device is not "an improvement to real property" as that term is used in OCGA § 9-3-51 (a). It argues that the interlock is not an integral part of the electrical equipment, but is a safety device which attaches to the circulating pump starter. Standard contends that it is not an integral part of the starter but rather is a piece of "personalty" that can be added or omitted.

In determining what constitutes an improvement to real property, the Supreme Court of Georgia has used a "commonsense analysis" to decide the question. *Mullis v. Southern Co. Svcs.*, 250 Ga. 90, 93-94 (296 SE2d 579) (1982). Factors important to this commonsense analysis are: "(1) is the improvement permanent in nature; (2) does it add to the value of the realty, for the purposes for which it was intended to be used; (3) was it intended by the contracting parties that the 'improvement' in question be an improvement to real property or did they intend for it to remain personalty." Id. at 94.

Here, in looking at the three factors of this analysis, we find that the device satisfies the first factor in that it was intended to be permanent in nature. It adds to the value of the property in that it was a necessary component of the system in order to prevent accidents such as the one which occurred here. As to the third factor, whether the contracting parties intended for the device to remain personalty or intended for it to be an improvement to the real property, there can be no question that the parties intended for the device to be installed permanently on the chlorine circulation system.

The court in *Mullis* also decided the issue of whether a component of a system which was an improvement to real property was itself an improvement to real property. The court found that if a component was an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property. However, if it were an "optional frill," unnecessary to the functioning of the system, then it would not be an improvement. *Mullis*, supra at 94. In *Mullis*, the component at issue was an air circuit breaker in a Georgia Power Company plant. The court found this to be an essential part of the plant's operating system.

In concluding that the component was an integral part of the improvement, the court in *Mullis* noted that the component was part of the original contract and design. *Mullis*, supra at 94. That is also true in this case. Further, after the injuries that occurred at the wave pool because the interlock device was not installed, Standard cannot argue that the device is an "optional frill."

Therefore, the record shows without dispute that the interlock device was an integral part of the system that should have been installed pursuant to the project's specifications. *Mullis*, supra; *Beall v. Inclinator Co. of America*, 182 Ga. App. 664, 665 (356 SE2d 899) (1987). Accordingly, we find the interlock device was an "improvement to real property" for purposes of the Statute of Repose.

2. Standard also argues that "substantial completion" as contemplated by OCGA § 9-3-50 did not occur until after July 10, 1990; therefore, the Statute of Repose does not apply. Standard contends that under the statute, the relevant inquiry is not when the project as a whole was completed, but rather when the portion of the project at issue was substantially completed. Since the interlock device was not installed until July 10, 1990, Standard claims that is when it was substantially completed.

But, as Standard points out, the interlock device was a very minor portion of the project. Assuming Kent was responsible for installing the device, it would have required only a few minutes for them to install it. Standard's contention that the installation of the interlock device was an entirely separate project from the one in which Kent undertook to perform the installation of all the electrical equipment is not persuasive.

The statutory definition also points to a contrary conclusion. OCGA § 9-3-50 defines "substantial completion" as "the date when construction was sufficiently completed, in accordance with the contract as modified by any change order agreed to by the parties, so that the owner could occupy the project for the use for which it was intended." OCGA § 9-3-50 (2). Here, there is no dispute that the wave pool was turned over to the owner more than eight years before Standard brought this claim and had been operating for over two years

before the accident occurred. Accordingly, under the statutory definition, the project was "substantially completed."

3. Standard also points out that Kent's amendment to the motion for summary judgment was not filed until two days before the hearing and should not have been considered. The amendment consisted solely of an affidavit of the Georgia State Financing & Investment Commission showing that construction on the project was completed and the project was accepted on April 15, 1988. We need not consider this enumeration as the affidavit was cumulative to facts already stipulated and there is nothing in the record to show the judge took this into consideration when ruling on the motion.

*Judgment affirmed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 20, 1998 —
RECONSIDERATION DENIED MAY 4, 1998 — 

*Chambers, Mabry, McClelland & Brooks, Walter B. McClelland,* for appellant.

*Tittsworth, Grabbe & Spillers, Charles L. Spillers,* for appellee.