559 S.E.2d 866

## FLORENCE COUNTY SCHOOL DISTRICT # 2, Appellant/Respondent,

### v.

## INTERKAL, INC., and United Industrial Syndicate, Inc., Respondents/Appellants.

### No. 3443.

Court of Appeals of South Carolina.

Submitted Nov. 6, 2001.

Decided Feb. 11, 2002.

Saunders M. Bridges, Jr., of Bridges, Orr & Ervin, of Florence, for appellant/respondent.

R. David Howser, George V. Hanna, IV and Andrew E. Haselden, all of Howser, Newman & Besley, for respondents/appellants.

CONNOR, J.

In this contribution action, Florence County School District # 2 (School District) appeals the finding that it was not

entitled to contribution from Interkal.[1]  Interkal appeals the
findings that it would have been liable on the underlying suit
absent its affirmative defense and that the School District's
negligence did not supersede Interkal's negligence.  We af-
firm.

## FACTUAL/PROCEDURAL BACKGROUND

On February 22, 1991, a bleacher collapsed during a basket-
ball game in the Hannah–Pamplico High School gymnasium
seriously injuring eleven-year-old Anthony Altman.  Altman
suffered fractures to his right femur, tibia, and fibula.

Hannah–Pamplico High School is a school within Florence
County School District # 2. Altman sued the School District
and Interkal, the manufacturer and seller of the bleachers, for
negligence, breach of warranty, and violations of the consumer
protection code.  The School District eventually settled the
case with Altman.  It then sued Interkal to recover a pro rata
share of the settlement under the Uniform Contribution
Among Tortfeasors Act, South Carolina Code Annotated Sec-
tion 15–38–10 (Supp.2000).

The first set of bleachers in the Hannah–Pamplico High
School gymnasium was installed in 1969, and the second set
was installed in 1971.  Interkal designed, manufactured, sold,
and distributed the bleachers.  In 1979, Interkal became
aware of problems associated with the type of bleachers
installed at Hannah–Pamplico High School.  Interkal sent a
safety bulletin to all its customers, including the School Dis-
trict, warning that the bleachers might fall and cause personal
injury if they were not properly maintained.  The safety
bulletin urged customers to inspect the bleachers for particu-
lar problems, including bent guides, damaged finger locks,
missing or damaged slide stops, and loose or missing bolts.
Interkal sent another safety bulletin to the School District in
1985 warning about potential safety problems with the bleach-
ers and giving detailed instructions on how to inspect the
bleachers.  In 1989 Interkal also sent the School District two
copies of a Safety Alert Manual which contained additional
warnings that failure to properly maintain and inspect the

---

1.  For purposes of this appeal, Interkal and United Industrial Syndicate,
    Inc. have stipulated they may be considered as one entity.

bleachers could result in a safety hazard. The School District did not retain maintenance records concerning the bleachers, nor did it maintain a regular maintenance schedule.

The School District contacted Mastercraft Renovations Systems in 1990 to inspect the bleachers and submit a proposal for repairing them. Mastercraft representative Martin Rapp inspected the bleachers and submitted a proposal for repair which included replacing the truck assembly for the bleachers on the home side of the gymnasium and repairing the bleachers on the visitor's side with parts from the home side which were still safe and operable. Harvey Putnam, the School District's maintenance director, was concerned with the cost of the proposal and requested that Rapp re-inspect the bleachers. After another inspection, Rapp submitted a second proposal in July 1990, which suggested realigning the trucks and welding the stress fractures on the bleachers. Neither proposal was submitted to the school board for consideration.

James Samuel McKnight, Ph.D., testified via deposition for Interkal that the collapse of the bleachers was caused by the School District's failure to follow the recommendations in the safety bulletins provided by Interkal, failure to follow Mastercraft's proposals for renovations, and failure to establish a regular maintenance program.

Melvin Richardson, Ph.D., an engineering expert, was also deposed. Richardson admitted that performing the repairs to the bleachers as suggested by Mastercraft and following a regular maintenance schedule may have reduced the chances for bleacher collapse. However, he opined that because the bleachers were not "precisely restrained," the hooks would not line up and would not always latch. According to Richardson, the bleachers were defectively designed and the design defects caused the latch failures which led to the collapse.

The School District's action for contribution was referred to a special referee with finality. Interkal argued recovery against it was barred by the South Carolina Statute of Repose because the action was brought more than thirteen years after the installation of the bleachers. Alternatively, Interkal argued the School District's negligence rendered it solely responsible for the injury to Altman.

The special referee considered, among other things, the parties' oral arguments and the depositions of McKnight and Richardson in rendering his decision. He found the settlement with Altman was reasonable and fair under the circumstances. He further found Interkal was negligent in designing the bleachers and breached its warranty regarding the bleachers. However, the special referee also held the South Carolina Statute of Repose provided an absolute defense to the School District's contribution action and protected Interkal from liability because the bleachers were improvements to real property and the lawsuit was not brought within the statutorily required thirteen-year period. Finally, the special referee held any negligence on the part of the School District in failing to inspect or maintain the bleachers was not an intervening act of negligence and Interkal's defective design was the contributing proximate cause to Altman's injury. Thus, absent the Statute of Repose defense, the special referee found Interkal would have been liable for the injuries to Altman.

Both parties now appeal.

## STANDARD OF REVIEW

Principles of equity are applicable to actions determining the pro rata liability of tortfeasors. S.C.Code Ann. § 15-38-30 (Supp.2000). In actions in equity referred to a special referee with finality, the appellate court may view the evidence to determine the facts in accordance with its own view of the preponderance of the evidence, though it is not required to disregard the findings of the special referee. *See Pinckney v. Warren,* 344 S.C. 382, 544 S.E.2d 620 (2001); *Wilder Corp. v. Wilke,* 324 S.C. 570, 479 S.E.2d 510 (Ct.App.1996).

## DISCUSSION

The School District argues the special referee erred in finding that where the underlying liability of a joint tortfeasor is barred by the Statute of Repose, the joint liability under the Uniform Contribution Among Tortfeasors Act is also time-barred. The School District urges us to adopt the findings of other jurisdictions that the existence of a cause of action,

rather than the right to enforce the cause of action, is the trigger for the right of contribution.

■ Initially, we are not convinced this issue is preserved for review. The special referee's order states the parties argued their positions on the right to contribution. However, the School District did not include the transcript of the oral arguments before the special referee in the Record on Appeal. Furthermore, it appears from the special referee's order that the only issue in controversy was whether the bleachers constituted "improvements to real property," thereby triggering the Statute of Repose. The School District's current argument, that it may recover under the Uniform Contribution Among Tortfeasors Act despite the operation of the Statute of Repose, was never ruled upon by the special referee. Because we are unable to discern what arguments were actually raised before the special referee and because the special referee did not rule upon the School District's current argument, it does not appear that this issue is preserved for review. *See State v. Hicks*, 330 S.C. 207, 499 S.E.2d 209 (1998) (issue must have been raised to and ruled upon by the lower court in order to be preserved for appellate review). However, because of the equitable nature of the proceedings and the uncertainty regarding the issues actually raised and ruled upon, we address this issue. *See State ex rel. Daniel v. Strong*, 185 S.C. 27, 192 S.E. 671 (1937) (equity looks beneath the rigid rules of the law to seek justice).

■ When interpreting statutes, we are concerned with ascertaining and effectuating legislative intent if it reasonably can be discovered in the language when construed in light of its intended purpose. *Singletary v. South Carolina Dep't of Educ.*, 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994). "If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the Court has no right to look for or impose another meaning." *Lester v. South Carolina Workers' Comp. Comm'n*, 334 S.C. 557, 561, 514 S.E.2d 751, 752 (1999).

The Uniform Contribution Among Tortfeasors Act provides that "where two or more persons become jointly or severally liable in tort for the same injury to person or property or for

the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." S.C.Code Ann. § 15–38–20(A) (Supp.2000). A right of contribution exists in favor of a tortfeasor who pays more than his pro rata share of the common liability. S.C.Code Ann. § 15–38–20(B) (Supp.2000).

The South Carolina Statute of Repose provides that no action to "recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than thirteen years after substantial completion of such an improvement." S.C.Code Ann. § 15–3–640 (Supp.2000). The definition of an action "based upon or arising out of the defective or unsafe condition of an improvement to real property includes: ... an action for contribution or indemnification for damages sustained on account of an action described in this subdivision." S.C.Code Ann. § 15–3–640(6) (Supp.2000).

In this case, the parties do not dispute that Altman's personal injury action arose more than thirteen years after the installation of the bleachers. The School District concedes the Statute of Repose applies to the underlying personal injury action against Interkal. Because the Statute of Repose specifically applies to actions for contribution, it is clear the General Assembly intended that persons who improve real property should be given the statutory right to protection from claims for contribution after the statutory period. We note that neighboring jurisdictions have similarly held a statute of repose bars any action for contribution after the statutory time period. *See Standard Fire Ins. Co. v. Kent & Assocs., Inc.,* 232 Ga.App. 419, 501 S.E.2d 858 (1998) (claims for indemnification and contribution were among those contemplated by the legislature when it enacted the statute of repose); *Krasaeath v. Parker,* 212 Ga.App. 525, 441 S.E.2d 868 (1994) (five-year statute of repose for medical malpractice cases barred contribution claim even though suit was timely under the twenty-year statute of limitations governing contribution actions); *New Bern Assocs. v. Celotex Corp.,* 87 N.C.App. 65, 359 S.E.2d 481 (1987) (six-year statute of repose governing actions to recover damages for injuries arising out of defective improvements to real property also governs actions for contribution arising out of the improvements).

The cases cited by the School District do not address statutes of repose. These cases do not reflect the difference between a statute of limitations and a statute of repose and merely stand for the proposition that the running of a statute of limitations against one tortfeasor does not affect another tortfeasor's ability to sustain a contribution action. Our Supreme Court stated:

A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.... [A] statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.

*Langley v. Pierce,* 313 S.C. 401, 403–404, 438 S.E.2d 242, 243 (1993) (quoting *First United Methodist Church v. U.S. Gypsum Co.,* 882 F.2d 862, 865–866 (4th Cir.1989) (internal citations omitted).

■ The Statute of Repose bars actions for contribution under the Uniform Contribution Among Tortfeasors Act brought more than thirteen years after the completion of an improvement to real property. Accordingly, there is no error in the special referee's finding that the Statute of Repose bars the School District's action for contribution.[2]

## CONCLUSION

For the foregoing reasons, the judgment below is

**AFFIRMED.**

ANDERSON and HOWARD, JJ., concur.

---

2. Because of our disposition of this issue we need not address Interkal's cross-appeal.