THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jane Cassie McKown Heavener,       
Appellant,
 
 
 

v.

 
 
 
Marshall E. Walker, Jr., as Personal Representative 
 of the Estate of William Wesley McKown, and all other persons unknown, 
 claiming any right, title, estate, interest in or lien upon the real estate 
 described in the Complaint herein, Defendants,
Of Whom, Marshall E. Walker, Jr., as Personal 
 Representative of the Estate of William Wesley McKown, is       
Respondent.
 
 
 

Appeal From Chester County
Robert K. Folks, Special Referee

Unpublished Opinion No. 2003-UP-376
Heard April 10, 2003  Filed June 
 3, 2003

AFFIRMED

 
 
 
B. Michael Brackett, of Columbia, for Appellant.
William C. Tindal, of Lancaster, for Respondent.
 
 
 

PER CURIAM:  In this action to quiet title, 
 Jane Heavener sued her fathers estate asking the special referee to declare 
 her to be the owner of two parcels of property.  The referee found for the estate 
 and Heavener appeals.  We affirm. 
FACTS
Jane Heavener brought this action to quiet 
 title and to have a copy of a deed declared valid and recordable.  The deed 
 purported to convey to her two pieces of real property from her deceased father, 
 William Wesley McKown.  The two pieces of property were known as the Craig 
 House and the old Durham Store Building and were more fully described in 
 deeds to Heaveners father recorded in the Chester County Courthouse.  The purported 
 deed in this case reads:
July 21st 1995

In this irrevocable living trust I deed the property bought 
 from Ron & Sam Bell known as the Craig House, & the old Durham Store 
 Bldg.― (illegible word) property, to my daughter, Jane Heavener, now & 
 forever  deeds on property at Chester courthouse, Book 620  Page 341 & 
 Book 525- Page 343- tax maps will designate #206-1-9-8 & #206-1-2-11 ―  

 
 
 
 
s/ William Wesley McKown
 
 
 
 

McKowns estate contested the authenticity 
 of the deed or in the alternative asked for reimbursement of expenses paid by 
 the estate if the properties were found to belong to Heavener.  The case was 
 referred to a special referee, granting him authority to enter final judgment.  

During trial, Rhonda Sullivan testified 
 she signed as a witness on the deed and witnessed McKown sign the deed on the 
 kitchen table at the Craig House.  Ronald Bell testified that, although he signed 
 as a witness on the deed, he did not actually witness McKown signing it but 
 recognized McKowns signature.  Heavener was unable to produce the original 
 deed during the trial but offered a copy instead.  Heavener stated she was unable 
 to produce the original because she had placed it in a white Bible kept in the 
 study at the Craig House and the Bible was stolen during a robbery.  She testified 
 she kept copies of the deed in a Ziploc bag in the study, but these were not 
 taken during the robbery.  Heavener testified she did not record the deed because 
 her father stated he did not want it recorded until after his death.  Heavener 
 admitted she never paid taxes on nor insured either of the properties.  McKown 
 died in February 1997.  Heavener made claims against McKowns estate seeking 
 reimbursement for monies she expended to repair the properties.  
When Marshall Walker, the personal representative 
 of McKowns estate, read McKowns will to Heavener in late February or early 
 March 1997, he stated the will specified that the proceeds derived from the 
 Craig House and the sale of timber were to be placed in trust for the benefit 
 of his grandchildren (Heaveners and Heaveners sisters children).  At the 
 reading of the will, Heavener did not assert that she owned the property.  Walker 
 testified he was familiar with McKowns business dealings, and the use of the 
 deed and the language used in the deed was inconsistent with McKowns normal 
 business dealings.  Walker related the details of a conversation he had with 
 McKown in August 1996 about the distribution of the properties in his will.  
 [McKown said] he wanted [the grandchildren] to have the proceeds from the timber 
 cutting and the Craig House.  [McKown added] Id like for you to go on and make 
 the Craig House into rental property, rent it out and have income coming in. 
 . . .  Heavener objected to this statement as inadmissible hearsay.  The referee 
 overruled the objection and admitted the testimony.  
Heavener first asserted her ownership of the properties 
 in a letter written to Walker on May 13, 1997.  The letter specified that the 
 deed was signed on the driveway at the Craig House and urged Walker to develop 
 the Craig House rather than sell it and to turn the Durham Store Building into 
 an agricultural museum.  The letter requested Walker give Heavener and her sister 
 time to create a proposal for turning the Durham Store Building into a museum 
 by arranging for insurance and a plan to alleviate any risk of liability to 
 the estate.  
After hearing the testimony, the special referee 
 found the deed ineffective because it was not executed under seal and Heavener 
 failed to prove that McKowns intent was to convey the properties to her.  Heavener 
 appeals. 
STANDARD OF REVIEW
This is an action to quiet title.  An action to 
 quiet title is equitable in nature.  Van Every v. Chinquapin Hollow, Inc., 
 265 S.C. 474, 477, 219 S.E.2d 909, 910 (1975).  An action to interpret a deed 
 is equitable in nature.  Slear v. Hanna, 329 S.C. 407, 410-11, 496 S.E.2d 
 633, 635 (1998).  In an action in equity, the appellate court can find facts 
 in accordance with its view of the preponderance of the evidence.  Townes 
 Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 
 (1976).  The appellate court is not required to disregard the findings of the 
 special referee.  Florence County Sch. Dist. #2 v. Interkal, Inc., 348 
 S.C. 446, 450, 559 S.E.2d 866, 868 (Ct. App. 2002). 
LAW/ANALYSIS
I.  Hearsay Statement
Heavener contends the referee erred when 
 he admitted Walkers testimony regarding the disposition of the Craig House 
 in McKowns will as inadmissible hearsay.  We disagree.
Hearsay is defined as a statement, other 
 than one made by the declarant while testifying at the trial or hearing, offered 
 in evidence to prove the truth of the matter asserted.  Rule 801(c), SCRE.  
 The South Carolina Rules of Evidence provide an exception to the prohibition 
 on use of hearsay if the statement shows the declarants state of mind.  

The following are not excluded by the hearsay rule . . . A 
 statement of the declarants then existing state of mind, emotion, sensation, 
 or physical condition (such as intent, plan, motive, design, mental feeling, 
 pain, and bodily health), but not including a statement of memory or belief 
 to prove the fact remembered or believed unless it relates to the execution, 
 revocation, identification, or terms of declarants will.

Rule 803(3), SCRE (emphasis added).  

A testators declarations concerning the execution, revocation, 
 identification or terms of his or her will are admissible.  Rule 803(3), SCRE.  
 By its very terms, the new rule allows the testator to look backward and make 
 a statement of memory or belief to prove the fact remembered or believed.

Danny R. Collins, S.C. Evidence 589 (2d ed. 
 2000).
The content of the conversation between 
 Walker and McKown was not offered to prove that McKown, not Heavener, owned 
 the properties, but to show McKowns state of mind regarding his intent as to 
 the distribution of the properties in his will.  See Ivester v. Fowler, 
 109 S.C. 424, 96 S.E. 154 (1917) (statement to show testator intended to create 
 new boundary between tracts of land).  Therefore, the conversation falls squarely 
 within the hearsay exception enumerated in Rule 803(3), SCRE, and the referee 
 did not err when he admitted Walkers testimony.         
II.  Conveyance of Property
Heavener argues the special referee erred 
 when he determined that the deed was insufficient to transfer the properties 
 because the deed met the formal requirements to be valid and was delivered.  
 We disagree. 
The purpose of a deed is to transfer an 
 interest in realty from a grantor to a grantee.  23 Am. Jur. 2d Deeds 
 § 1 (2002).  When determining the construction of a deed, the intention of the 
 grantor controls.  McDaniel v. Connor, 206 S.C. 96, 100, 33 S.E.2d 75, 
 76 (1945).  [T]he party asserting a transfer of title bears the burden of proving 
 its own good title.  Lowcountry Open Land Trust v. State, 347 S.C. 96, 
 103, 552 S.E.2d 778, 782 (Ct. App. 2001).
Heavener argues that because (1) the deed 
 was written; (2) identified McKown as the grantor; (3) identified Heavener as 
 the grantee; (4) was signed by McKown; (5) identified the properties by their 
 common names and by referencing their descriptions in the deed book and the 
 tax map; (6) was witnessed and signed by two witnesses; (7) set forth the intention 
 of the grantor to convey property, and (8) employed language that reasonably 
 indicated McKown was reserving a life estate for himself in the property, she 
 met her burden of proving the intention of transferring title. Thus she argues, 
 the extrinsic evidence introduced at trial is irrelevant.  We disagree.  
The language of the deed itself is ambiguous because 
 the deed states it is an irrevocable living trust.  Nowhere in the record is 
 there reference made to an irrevocable living trust, nor were terms of an irrevocable 
 living trust introduced at trial.  Because there is reference in the purported 
 deed to a document that Heavener has not proved existed, there is a latent ambiguity 
 in the document.  When there is latent ambiguity in a document, the court may 
 allow extrinsic evidence to determine the grantors intent.  S.C. Natl Bank 
 v. Bonds, 260 S.C. 327, 332, 195 S.E.2d 835, 837 (1973).
When examining the evidence presented 
 to the referee, substantial evidence supports a finding that McKown did not 
 intend to transfer the properties to Heavener.  Heavener did not assert ownership 
 of the properties during the reading of the will.  Heavener never paid taxes 
 on or insured the properties.  Heavener wrote a letter to Walker asking him 
 not to sell the Craig House and to allow time to create a proposal to turn the 
 Durham Store Building into an agricultural museum, which was inconsistent with 
 her claim of ownership of the property.  Heavener filed claims against the estate 
 to reimburse her for repairs she made to the properties. 
Walker testified it was not in McKowns 
 normal course of business dealings to transfer property in this manner and that 
 the language of the document was inconsistent with language normally used by 
 McKown.  Walkers conversation with McKown demonstrates that McKown intended 
 to leave the income generated from the Craig House to his grandchildren, which 
 is inconsistent with Heaveners claim of ownership of the property.  The referee 
 had credibility concerns with Heaveners story regarding the theft of the original 
 document and the existence of copies in a Ziploc bag in the same room.  There 
 were conflicts between Heaveners and the witnesses testimony regarding where 
 the signing of the document took place.  We defer to the judgment of the referee 
 who was in a better position to see and hear the witnesses and thereby to judge 
 their credibility.  The appellate court is not required to disregard the findings 
 of the special referee.  See Florence County Sch. Dist. #2, 348 
 S.C. at 450, 559 S.E.2d at 868.
Looking at the extrinsic evidence presented, 
 we conclude the referee did not err when he found Heavener had failed to meet 
 her burden in showing she was entitled to a transfer of title in the properties. [1] 
 AFFIRMED.
STILWELL and HOWARD, JJ., and STROM, 
 Acting Judge, concur.

 
 [1]           As we find Heavener failed to meet her burden to 
 prove transfer of title in the properties, we need not address whether the 
 deed was invalid for lack of a seal.