6693

GRAHAM v. BURGISS.

1. CORPORATION—ESTOPPEL—STOCK.—Where the directors have for some time recognized and acted upon the title to stock held by it in another corporation in its name as being in its president as an individual, it cannot afterwards question his ownership, although no resolution has been passed by the board authorizing the transfer to him.

2. IBID.—STOCK.—He who has paid for stock held by one corporation in another is the equitable owner thereof, and it is the duty of the president of the holding corporation to transfer the stock to him.

3. IBID.—IBID.—SPECIFIC PERFORMANCE.—A CONTRACT in writing to purchase a certain number of shares of stock at a given price with interest, payable in installments, is an executed contract, and the seller is entitled to judgment for the price agreed upon with interest from the date of the contract upon tender of the stock.

Before WATTS, J., Greenville, November term, 1906. Affirmed.

Action by C. E. Graham against W. W. Burgiss. From judgment of the plaintiff, defendant appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *Authority of an officer will not be presumed from an act:* 21 Ency., 855, 859. *No evidence as to damages:* 26 Ency., 859. *Specific performance on contract of sale of stock will not be enforced except when it has a special value:* 2 Thomp. on Corp., secs. 2435, 2728; 32 S. C., 203; 41 S. C., 349. *Interest only due on each payment after due:* 29 S. C., 596; 66 S. C., 379.

*Mr. J. A. McCullough,* contra, cites: *Defendant cannot now say plaintiff has no title:* 58 S. C., 269. *Possession is presumptive ownership:* 29 S. C., 597. *Contract is an actual sale:* 24 Ency., 1051, 1068, 1120. Smith Mer. Law, sec. 599. *Vendor may recover price in executory contract:* 24 Ency., 1119, 165; Mass., 310; 100 U. S., 128; 17 L. R. A., 177; 74 Am. Dec., 79; 38 Am. St. R., 395; 18 Am. R., 313.

October 26, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action was brought by the plaintiff to recover the purchase money of certain shares of

stock in the Franklin Cotton Mill. The contract of purchase
was made by defendant with Huguenot Mills, and the
defense mainly relied on was that Huguenot Mills had never
transferred its interest to the plaintiff, and that, therefore,
the defendant was not liable to him for the purchase money.
The Circuit Judge directed a verdict for the plaintiff. The
defendant offered no testimony and made no question of the
credibility of the testimony on the part of the plaintiff.
The issue involved in this appeal, therefore, is whether the
Circuit Court's legal conclusion from the undisputed facts in
sound.

The defendant on the 9th of July, 1902, contracted in
writing with the Huguenot Mills to buy from it forty
shares of the capital stock of the Franklin Mill, each of the
par value of one hundred dollars, at eighty-five dollars per
share. When the contract was made the plaintiff
was president of the Huguenot Mills, and owned
five-sixths of its stock, and R. L. Graham and
Abnertheny owned the other sixth. Afterwards, a reorgan-
ization of the Huguenot Mills was effected. The agree-
ment for reorganization contemplated an increase of capital
stock and the sale of all the capital stock owned by the
plaintiff in the Huguenot Mills, and his ownership of the
stock of the Franklin Mill, subject to the contract of pur-
chase by the defendant, Burgiss. Indeed, it seems from the
following evidence of the plaintiff, he was recognized as
the real owner of the stock in Franklin Mill before the
reorganization, though the certificate was held in the name
of the Huguenot Mills. "There has never been a new
corporation; that stock was issued to the Huguenot Mills.
* * * It was issued to the Huguenot Mills, which I have
stated before, and I owned five-sixths of the Huguenot
Mills, and my brother and a partner of his owned the other
one-sixth; and in selling out the Huguenot Mills to the new
organization, they didn't want to buy all of the assets, and
I had over a hundred thousand dollars' worth of assets and
this stock standing in the name of the Huguenot Mills, and

this stock was never sold to the new organization, and my brother being president of the new organization, he had to transfer it to me." In pursuance of the understanding, R. L. Graham, the new president of the Huguenot Mills, assigned the certificate of stock in the Franklin Mill to the plaintiff. No resolution was ever passed by the directors of the Huguenot Mills authorizing the transfer, but the corporation, through its stockholders and directors, have acted under the reorganization agreement and acquiesced in the transfer of the stock to the plaintiff, from 1904 to the present time. The corporation, through its stockholders and directors, having thus allowed the plaintiff to part with his stock in the Huguenot Mills, with full understanding that he was to have the stock in the Franklin Mill, and having acquiesced in the president's transfer to the plaintiff, it is now too late for the corporation to question his ownership. *Lancaster Co.* v. *R. R. Co.*, 28 S. C.; 142, 5 S. E., 338.

The plaintiff's title was good for another reason. There can be no doubt under the facts stated, before the transfer by the president, the plaintiff was the equitable owner and entitled to a legal transfer of the property. Having such right, it was a duty of the corporation imposed by the law to make the transfer, and the president, as its executive officer, was the proper person to perform that duty for it. The Court will, therefore, give full recognition and effect to this transfer made by the president in the name of the corporation.

In addition to all this, the defendant fully recognized plaintiff's right to the stock, and often promised to pay him the purchase money.

The position that the recovery could not be for the full contract price, but for the difference between the contract price and the market price at the time of trial, is not tenable. The language used by the defendant in his letter closing the bargain is: "The writer confirms the trade with you as follows: I take your forty shares

of Franklin Mill stock at 85, first payment to be made one year from the 15th of next October; the other to be paid in equal amounts, one and two years each; interest payable semi-annually." This was not a promise to purchase, but the actual purchase of a particular forty shares of stock, then held by the Huguenot Mills. The contract was, therefore, fully executed; the shares of stock thereby became the property of the defendant in the hands of the former owner, and when the seller's obligation was fully performed by tender to the defendant, the right of action accrued for the entire purchase money. *Woods* v. *Cramer,* 34 S. C., 516, 13 S. E., 660; 1 Benjamin on Sales, page 333; 24 A. & E. Enc., 1046 and 1120.

Defendant's position, that he is liable for interest only from maturity of the instalments, is also untenable. The rule is universally recognized that a contract to pay a certain sum with interest means interest is to run from the date of the contract.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.