497 S.E.2d 731

**WILDER CORPORATION f/k/a Wilder
Mobile Homes, Inc., Respondent,**

v.

**Klaus WILKE and Rita E. Wilke, Petitioners.**

**No. 24770.**

Supreme Court of South Carolina.

Heard Dec. 16, 1997.
Decided March 9, 1998.

Edward M. Woodward, Jr., of Woodward, Cothran & Herndon, Columbia, for petitioners.

John F. Emerson and William H. Short, Jr., both of Sinkler & Boyd, P.A., Columbia, for respondent.

TOAL, Justice:

This case involves the foreclosure of a bond for title. Respondent, Wilder Corporation ("Seller"), brought this foreclosure action against petitioners, Klaus and Rita Wilke ("Buyer"), as a result of Buyer's indebtedness arising out of the sale of property. The master-in-equity found in favor of Buyer. The Court of Appeals affirmed in part and reversed in part. Buyer appeals the Court of Appeals' decision. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In 1979, Seller agreed to sell its mobile home park to Buyer in exchange for Buyer's motel and the additional sum of $635,000. On January 25, 1980, the parties signed a bond for title memorializing the exchange and the $635,000 debt. The bond for title provided that Buyer would pay monthly payments of $5,658.80 to commence March 1, 1980, and to continue until February 1, 1995, when a balloon payment of the remaining balance would be due. However, the contract reduced Buyer's first twenty payments by $500, from $5,658.80 a month to $5,158.80 a month. Additionally, the bond for title allowed Buyer to defer a maximum of three months successive payments in the event occupancy at the mobile home park fell below 152 spaces. It also permitted the parties to set-off or add any claims or judgments arising under the terms of the agreement.

After Buyer took possession of the mobile home park on January 28, 1980, the parties executed a modification agreement which provided that Seller would pay Buyer a one-time payment of $6,000 and that the bond for title would be reduced by $500 per payment for the first twenty payments.[1]

---

1. This modification was made because the parties discovered inaccuracies in the mobile home park's monthly operating statement and difficulties with the South Carolina Department of Health and Environmental Control.

Buyer began payment on the bond for title on March 1, 1980. However, in 1991, Buyer deferred payments for the months of September, October, and November due to low occupancy in the mobile home park.

Sometime during the repayment period, Buyer filed suit against Seller in federal district court concerning Seller's failure to connect the mobile home park to a sewage treatment facility, as required by the bond for title. On July 12, 1994, a federal district court issued a judgment against Seller in the amount of $146,584.72.[2] The court further ordered post-judgment interest in the amount of 5.31% per annum.

After Buyer made the final monthly payment in January 1995, Seller sent Buyer a demand letter requesting $512,-557.61 for the balloon payment due February 1, 1995. Buyer tendered the sum of $280,990.33 to Seller. Seller refused the tender and brought this foreclosure action against Buyer. Subsequent to the filing of this action, Buyer paid $281,000 to Seller's attorneys pursuant to a motion for appointment of receiver.

A hearing was conducted before a master-in-equity on July 6, 1995. Both Buyer and Seller provided amortization schedules reflecting their views of Buyer's payment obligation. The master adopted Buyer's amortization schedule and made four conclusions of law: (1) the modification agreement modified the bond for title insofar as it reduced the principal amount by $10,000; (2) Buyer properly credited the federal court judgment in the amount of $146,584.72 on July 12, 1994. Moreover, no attempt to levy or otherwise execute the judgment was required in order to offset debt under the bond for title, and there was no requirement that Buyer wait to offset such judgment until such time as all appeals had been exhausted; (3) Buyer made or was excused from making all scheduled payments under the bond for title, except for the final balloon payment; and (4) the court agreed with the assumptions Buyer used in constructing the amortization schedule. Accordingly, the master ordered Buyer to pay a residual amount of $811.72, plus interest accruing at 9.75%.

---

2. The federal district court judgment was affirmed by the Fourth Circuit Court of Appeals in *Wilke v. Wilder Corp.*, 74 F.3d 1235 (4th Cir.1996).

The Court of Appeals affirmed the master's order except on four points. *See Wilder Corp. v. Wilke,* 324 S.C. 570, 479 S.E.2d 510 (1997). First, the Court of Appeals held that interest began to accrue on the loan from the date of signing, January 25, 1980, rather than the date of the first payment, March 1, 1980. Second, since the interest accrual date was January 25, 1980, the court held that the master erred in applying Buyer's first payment entirely toward principal. Third, the court found that the master incorrectly gave Buyer credit for 180 payments when the evidence supported only 179 payments. Finally, the Court of Appeals noted that Buyer's amortization schedule gave credit for the federal court judgment in the amount of $147,289.53; the federal court judgment was $146,584.72, with post-judgment interest accruing at the rate of 5.31% per annum. The court held that the master should have only deducted the actual amount of the judgment, $146,584.72.

This Court granted Buyer's petition for a writ of certiorari to consider the following questions:

1. Did the Court of Appeals err in holding that Seller preserved or did not waive any objections to the calculations in Buyer's amortization schedule by stipulating to the accuracy of those calculations?

2. Did the Court of Appeals err in holding that interest began to accrue prior to the first payment?

3. Did the Court of Appeals err in holding that a payment had not been made or credited?

4. Did the Court of Appeals err in considering whether the trial court erred by adopting the figures in Buyer's amortization schedule as to the amount of the federal court judgment?

## LAW/ANALYSIS

### A. WAIVER/PRESERVATION

Buyer argues that the following issues were not properly preserved for review by the Court of Appeals: (1) the date when interest started to accrue; (2) application of the first payment to principal; (3) the number of payments made by Buyer; and (4) accrual of interest on deferred payments. In a related argument, Buyer contends that the Court of Appeals

erred in holding that Seller, by its stipulation, did not waive any objections to the calculations in Buyer's amortization schedule. It should be noted at the outset that Buyer has preservation problems of its own in that Buyer did not raise all of these issues to the Court of Appeals in its petition for rehearing. That said, we disagree with Buyer's contention that Seller waived or failed to preserve its position on these issues.

At trial, Seller's attorney made the following objection/stipulation when Buyer's amortization schedule was introduced into evidence:

We have an objection to the theories considered by [the accountant] in doing the math, but we have no objection to the way he did the math. We presume that if your honor rules and sustains [Buyer's] point on the theories, that the math will be correct.... [Buyer's amortization schedule] is a mathematical run of payments with certain presumptions made on theories propounded by [the accountant]. [The accountant] has run those numbers. And if [his] points are sustained by you, then [his] run of the numbers is accurate.

It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review. *Creech v. South Carolina Wildlife and Marine Resources Dep't*, 328 S.C. 24, 491 S.E.2d 571 (1997). Moreover, an objection must be sufficiently specific to inform the trial court of the point being urged by the objector. *Broom v. Southeastern Highway Contracting Co.*, 291 S.C. 93, 352 S.E.2d 302 (Ct.App.1986). In this case, Seller's and Buyer's amortization schedules clearly conflicted on the issues Buyer propounds as not having been preserved for appellate review. These issues were, in fact, integral to the computation of the final balances reached by either side. Thus, in this context, Seller's objection was specific enough to allow the trial judge to understand and rule upon the alleged error.

Buyer next argues that the trial judge failed to rule upon Seller's objection at trial. As such, Buyer contends that the above issues were not preserved for review because Seller

failed to make a Rule 59(e) motion.[3]  We disagree.  Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court but not yet ruled upon by it. *Hubbard v. Rowe*, 192 S.C. 12, 5 S.E.2d 187 (1939).  Here, the trial court ruled on Seller's objections by expressly adopting Buyer's amortization schedule in its order.  Consequently, it was unnecessary for Seller to make any post-trial motions.

■  Finally, we disagree that Seller, by its stipulation, waived any objections to Buyer's amortization schedule.  Although stipulating to the accuracy of Buyer's numerical calculations, Seller unequivocally objected to the presumptions underlying those calculations.  As discussed above, in the context of the case, Seller's objection was sufficiently specific to inform the trial judge of any error.  Therefore, the Court of Appeals was correct in holding that Seller did not waive any objections to Buyer's amortization schedule.

## B.  INTEREST ACCRUAL DATE

Buyer argues that the Court of Appeals erred in finding that the interest accrual date began on January 25, 1980, rather than March 1, 1980.  We disagree.

The bond for title was signed on January 25, 1980.  It provided, in part:

> [T]he aforesaid sum shall be payable in monthly installments of principal and interest at the rate of Nine and three-quarters per cent (9.75%) per annum at the office of the obligor. . . .   Said monthly installments shall be in the amount of Five Thousand Six Hundred Fifty-eight and 80/100 Dollars ($5,658.80) commencing on the 1st day of March, 1980, and on the 1st day of each month thereafter until the principal and interest are fully paid. . . .

■  Where a contract for the payment of a sum of money at a future date provides that it is payable with interest, or is to bear interest, without specifying from what date the interest is to be computed, it will be construed to bear interest

---

3.  Rule 59(e), SCRCP, provides, "A motion to alter or amend the judgment shall be served not later than 10 days after receipt of written notice of the entry of the order."

from the date of the contract. *Graham v. Burgiss,* 78 S.C. 404, 59 S.E. 29 (1907); G.M.H., Annotation, *Construction of Contractual Provisions As To Interest As Regards Time From Which Interest Is To Be Computed,* 69 A.L.R. 958 (1930). In this case, the bond for title failed to specify the interest accrual starting date; it merely designated when the loan payments were to begin. Therefore, interest began to accrue on January 25, 1980, the date the bond for title was signed.

## C. NUMBER OF PAYMENTS

█ Buyer argues that the Court of Appeals erred in holding that Buyer should have been given credit for 179 payments instead of 180 payments. We disagree.

The Court of Appeals found that Buyer's list of payments, which the master admitted into evidence under a stipulation that it accurately reflected payments Buyer could prove, showed 175 payments having been made. The Court of Appeals added to this number the three payments deferred in 1991 and the January 1995 payment to arrive at 179 payments. Buyer's amortization schedule, on the other hand, showed 180 payments having been made.

In 1980, Buyer made 10 monthly installments. For fourteen years thereafter, Buyer made 12 monthly installments every year except for 1991 when Buyer deferred three payments. Therefore, excluding the three deferred payments and the January 1995 payment, Buyer made a total of 175 monthly payments. When the three deferred payments and the January 1995 payment are added, the total becomes 179 payments.

## D. FEDERAL COURT JUDGMENT

█ Buyer argues that the Court of Appeals erred in considering the issue of whether post-judgment interest should have been applied to the federal court judgment as a set-off against amounts owed by Buyer. We disagree.

The Court of Appeals held that the amount of the set-off for the federal court judgment could not include any amounts for post-judgment interest. Buyer does not challenge the correctness of this holding, but simply argues that this issue was not preserved for review by the Court of Appeals. For the

reasons outlined above, we find that Seller's objection at trial was sufficient to preserve this issue for appellate review. Moreover, the trial court ruled upon Seller's objection by expressly adopting Buyer's amortization schedule in its order.

### CONCLUSION

For the foregoing reasons, the Court of Appeals' decision is **AFFIRMED.**

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.