THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

Appeal From Charleston County
 Daniel  F. Pieper, Circuit Court Judge

 
 
 
John Phillip Bethards, Appellant,
v.
Parex, Inc., Jeff Thomas d/b/a Thomas Construction, Mike Tenny d/b/a Synco Enterprise, Charleston Gypsum n/k/a CSR America, and Weather Shield Mfg., Inc.,
Defendants,
Of Whom Mike Tenny d/b/a Synco Enterprise and Weather Shield are
Respondents.
 
 
 

AFFIRMED

Unpublished Opinion No. 2006-UP-304
Heard March 7, 2006  Filed June 30, 2006
Withdrawn, Substituted and Refiled August 30, 2006

 
 
 
Justin O'Toole Lucey, of Mt. Pleasant, for Appellant.
John L. McCants, of Columbia and Trent M. Kernodle and Christine C. Varnado, both of Charleston, for Respondents.
 
 
 

PER CURIAM: This case involves negligence and breach of warranty claims by a homeowner, John Bethards, against Mike Tenny d/b/a Synco Enterprises (Synco), a contractor, and Weather Shield Manufacturing, a window manufacturer.  The trial court judge granted a directed verdict in favor of Synco and Weather Shield on Bethards claims for negligence and breach of the implied warranty of fitness for a particular purpose.  A jury found for Weather Shield on the remaining breach of the implied warranty of merchantability claim.  We affirm.
FACTS
Bethards hired an architect, Thomas Smith (Architect), and a general contractor, Jeff Thomas d/b/a Thomas Construction, to design and build a home in Isle of Palms, South Carolina.  Part of Bethards contract with Architect included site visits by Architect to the home.  
Bethards home was built using an Exterior Insulation Finish System (EIFS) (synthetic stucco), which Synco allegedly installed.  The windows and sliding glass doors for the home were manufactured by Weather Shield and bought at Southern Lumber and Millwork Corp.  (Southern Lumber).  
Bethards testified he began experiencing problems with the sliding doors soon after he moved into the home in 1996.  At Bethards request, Thomas Construction contacted Southern Lumber about the problems.  Bethards testified that either a Southern Lumber or a Weather Shield representative went to the home and repaired the sliding doors using parts Weather Shield apparently sent to Southern Lumber.  Bethards claims when the representative left, the sliding glass doors were in working order and he did not experience problems with them again until 2001.  The representative only examined the sliding doors; he did not have any interaction with the windows.  
In 1999, the home was damaged by Hurricane Floyd.  Bethards submitted a claim to his insurance company for the damage.  The insurance company sent an engineer to the house to assess the damages, and he determined two windows were damaged by the hurricane but a third was likely damaged by someone trying to open the window without unlocking it.  The engineer also pointed out a water stain in the second floor sunroom that was unrelated to the hurricane.  
In 2000, after hearing of some problems in the area with stucco, Bethards became concerned about the EIFS on his home.  In 2002, Bethards had his home inspected by a professional engineer who determined that the EIFS on the home had failed.  His engineer also determined the home had roof leaks and improperly installed flashing at the roof and around the windows and doors.  All of these factors and the hurricane led to water damage in the home.  
In 2001, Bethards began experiencing the same problems with the sliding doors as he had in 1997.  He testified the sliding doors leaked when it rained and caused water damage and electrical problems.  He also testified that the locks on the sliding doors rusted and could not be locked.  
In 2001, Bethards brought suit against Parex, Inc. (the EIFS manufacturer), Thomas, Synco, and Charleston Gypsum (the EIFS supplier).  In April 2003, Bethards added Weather Shield as a defendant.  Bethards did not perfect service on Thomas and settled with Parex and Charleston Gypsum before trial began.  Bethards sued Synco and Weather Shield for negligence and Weather Shield for breach of implied warranty.  The trial court granted directed verdicts for Synco and Weather Shield on Bethards negligence claims on the grounds that the statute of limitations barred the claims.  The trial court also granted a directed verdict to Weather Shield on Bethards claim of breach of the implied warranty of fitness for a particular purpose.  The trial court denied Bethards motion for a directed verdict on his remaining claim of breach of implied warranty of merchantability but found the evidence presented at trial created a jury question.  The jury found Weather Shield did not breach the implied warranty of merchantability.  Bethards appeals.
I.  Claims Against Synco
A.     Statute of Limitations 
Bethards claims the trial court erred in directing a verdict in favor of Synco because the statute of limitations barred the action.  Specifically, Bethards contends the trial court erred in finding Architect knew or should have known of the defective EIFS application and in imputing Architects knowledge of the defective installation to Bethards.  We disagree.  
When ruling on a directed verdict motion, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  Sabb v. S.C. State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. 
Sabb, 350 S.C. at 427, 567 S.E.2d at 236.  Neither the trial court nor this court has the authority to decide credibility issues or resolve conflicts in testimony.  Garrett v. Locke, 309 S.C. 94, 99, 419 S.E.2d 842, 845 (Ct. App. 1992).  In ruling on a directed verdict motion, the trial court is concerned with the existence of evidence, not its weight. 
State v. Gaster, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002).  This court must follow the same standard.  Adams v. G.J. Creel & Sons, Inc., 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995).
The statute of limitations for a negligence action is three years.  S.C. Code Ann. § 15-3-530 (2005).  According to the
discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered.   Dean v. Ruscon Corp., 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct.  Young v. South Carolina Dept of Corrections, 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct. App. 1999).  The date on which discovery of the cause of action should have been made is an objective, rather than subjective, question.  Bayle v. South Carolina Dept of Transp.,  344 S.C. 115, 123, 542 S.E.2d 736, 740 (Ct. App. 2001).  In other words, whether Bethards actually knew he had a claim is not the test. Rather, [we] must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.  Id. (quoting Young, 333 S.C. at 719, 511 S.E.2d at 416).
At trial, Bethards presented the testimony of three experts, Ken Schneider, an architect, Robert Sisnroy, an engineer, and Tom Carlson, a general contractor, who all testified that the EIFS was improperly installed.  Each asserted that the installer had failed to leave an engineered sealant joint and that failure was a breach of a duty of care.  Schneider testified that an architect could tell by looking at the house that the EIFS system is not in compliance with the manufacturers specifications and that the joint is inadequate.  Schneider also asserted that a prudent architect should have observed the defective installation during construction and informed the homeowner so the problem could be corrected.  
Because the only evidence presented was that the improper installation of the EIFS system was open and obvious during the construction of the home, we find no error in the trial courts finding that the architect, Smith, knew or should have known of the defective workmanship when the home was completed in 1996.  Additionally, we find no error in the trial courts decision to impute Architects knowledge to Bethards.  
It has been held that an architect, in the performance of his supervisory functions with respect to a building under construction, ordinarily acts as the agent and representative of the person for whom the work is being done. 
Hines v. Farr, 235 S.C. 436, 443, 112 S.E.2d 33, 37 (1960).  It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting within the scope of his authority. 
Crystal Ice Co. of Columbia v. First Colonial Corp., 273 S.C. 306, 309, 257 S.E.2d 496, 497 (1979).

Bethards argues that the trial court had no basis, under agency principles, to impute the knowledge of Architect to him because there is no evidence that the architect actually visited the home after the EIFS system was installed.  However, Bethards admitted he contracted with Architect to periodically visit the site during construction to ensure the house was being built properly, and Bethards never asserted at trial that Architect failed to inspect the home.  Bethards testified as follows:
Attorney:  And I believe you said you hired Tommy Smith during the course of construction to watch over and inspect the construction of the home; is that correct?
Bethards:  Yeah.  I also asked my architect tobecause of my schedule flying with the Air Force, flying for United, being gone a lot, I asked him toand contracted with him to visit the home and ensure that the construction was going according to plan. 
Attorney:  And, did, in fact, he do that for you?
Bethards:  To the best of my knowledge, he did.  I did pay him to do that and he did write reports that showed he visited or, at least, the reports said he visited and the problems he found.   

Because Architect had a duty to inspect the work being done on the home during construction, he was Bethards agent, and his constructive knowledge is imputable to Bethards.  Therefore, we find no error in the trial courts ruling. 
B.      Judicial and Equitable Estoppel 
Bethards also argues Synco should be judicially estopped from asserting the two inconsistent defenses that the statute of limitations had run on Bethards claim and that the EIFS system was installed according to industry standards.  However, Bethards never made this argument to the trial court, and raises it for the first time on appeal.  [A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).  Therefore, we find this issue is not preserved for our review.  
II.  Claims against Weather Shield
A.   Directed Verdict 
Bethards argues the trial court erred in granting a directed verdict in favor of Weather Shield on his negligence claim because the statute of limitations barred the action.  We disagree.
As stated above, the statute of limitations for a negligence action is three years, and this court will apply the discovery rule to determine when the statute began to run.  S.C. Code Ann. § 15-3-530 (2005).  Under the discovery rule, the statutory limitations period begins to run from the date when the injury resulting from the wrongful conduct either is discovered or may be discovered by the exercise of reasonable diligence, not when the plaintiff develops a full-blown theory of recovery.  Cline v. J.E. Faulkner Homes, Inc., 359 S.C. 367, 371-72, 597 S.E.2d 27, 29 (Ct. App. 2004); Tanyel v. Osborne, 312 S.C. 473, 475, 441 S.E.2d 329, 330 (Ct. App. 1994).
In November 1999, the engineer the insurance company sent to Bethards home after Hurricane Floyd informed him that at least one of the water stains he listed on his insurance claim was not caused by the hurricane.  The trial court was correct in determining that this was enough to put Bethards on notice that he may have a claim against an unknown party.  However, Bethards did not add Weather Shield to this action until 2003, after three years had passed.  Accordingly, the trial court correctly determined the statute of limitations barred Bethards negligence claim against Weather Shield.
B.   Judicial and Equitable Estoppel 
Bethards contends that Weather Shield should be judicially and equitably estopped from asserting the two inconsistent defenses that he should have known of the windows defects in 1999 and that the windows were not defective.  This argument is not preserved for our review because it was not raised to or ruled upon by the trial court.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding an issue must be raised to and ruled upon by the trial court to be preserved for appeal).  
C.   New Trial 
Bethards claims the trial courts legal and evidentiary errors entitle him to a new trial.  Bethards contends the trial court erred by: (1) admitting evidence concerning the value of the home; (2) allowing the testimony of an undisclosed expert witness; and (3) failing to charge the jury as he requested.  Additionally, Bethards argues he should be granted a new trial because the trial courts erroneous directed verdict for Tenny was prejudicial to his remaining claim against Weather Shield.   
In determining whether the judge erred in denying a motion for a new trial, we must look at the testimony and inferences raised therefrom in favor of the nonmoving party. 
Holroyd v. Requa, 361 S.C. 43, 52, 603 S.E.2d 417, 422 (Ct. App. 2004) (citing Welch v. Epstein, 342 S.C. 279, 302-03, 536 S.E.2d 408, 420 (Ct. App. 2000)).  
 1.       Home Value
Bethards argues the trial court erred in allowing Weather Shield to introduce evidence regarding the value of his home.  We disagree. 
The admission or exclusion of evidence is within the trial judges discretion.  Brooks v. Brooks, 288 S.C. 71, 73, 339 S.E.2d 531, 532 (Ct. App. 1986).  To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jurys verdict was influenced by the challenged evidence or the lack thereof.  Fields v. Regl Med. Ctr. Orangeburg, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005) (citations omitted).  Additionally, as a settled principle of law, the admission of improper evidence is harmless where it is merely cumulative of other evidence.  Ramos v. Hawley, 316 S.C. 534, 537, 451 S.E.2d 27, 28 (Ct. App. 1994).
Bethards asserts the testimony on the value of his home was prejudicial to him because it implied that Bethards was very wealthy and therefore would not need to be compensated for the damages on his home as it appeared that he could afford to pay out of pocket for the expenses in fixing his home.  Assuming, without so finding, the trial court erred in allowing Weather Shield to elicit information about the value of his home, Bethards cannot show the testimony was prejudicial.  Bethards testified regarding the rental rate of his home, his mortgage, and introduced photographs of the home.  Therefore, the testimony was cumulative because Bethards introduced evidence that implied he was wealthy and could have led the jurors to the same conclusion.
2.     Expert Witness Testimony 
Bethards argues the trial court erred in allowing Philip Drake to testify as an expert witness because Weather Shield did not disclose him before trial.  We disagree.  
The qualification of an expert witness and the admissibility of the experts testimony are matters within the trial courts sound discretion, and will not be reversed on appeal absent an abuse of discretion.  Fields, 628 S.C. at 25, 609 S.E.2d at 509.  Where a party fails timely to disclose the identity of an expert witness, the question of whether the witness testimony may be received in evidence is left largely to the discretion of the trial judge.  Tribble v. Hentz 285 S.C. 616, 618, 330 S.E.2d 560, 562 (Ct. App. 1985).
We find no abuse of discretion in the trial courts decision to qualify Drake as an expert witness.  Our review of the record indicates Weather Shield named Drake before trial as a fact witness in an answer to Bethards first set of interrogatories, and explicitly reserved the right to elicit opinions from each witness to the extent he is an expert in his field.  Additionally, Bethards had ample opportunity to fully explore the witness opinions and anticipated trial testimony during his deposition.  Moreover, after Bethards attorney objected to Drakes qualification as an expert, the trial court offered him the opportunity to voire dire the witness before the trial court made its ruling, and Bethards attorney declined.  Therefore, the trial court did not err in allowing his testimony.
 3.       Jury Charges
Bethards argues the trial court erred in failing to charge the jury as he requested.  We disagree.
A trial court is required to charge the current and correct law.  Burroughs v. Worsham, 352 S.C. 382, 392, 574 S.E.2d 215, 220
(Ct. App. 2002).  When reviewing a jury charge for alleged error, our court must consider the charge as a whole, in light of the evidence and issues presented at trial.  Id.  To warrant reversal, the refusal to give a requested charge must have been erroneous and prejudicial.  Jones v. Ridgely Communications, Inc., 304 S.C. 452, 456, 405 S.E.2d 402, 404 (1991).
First, Bethards claims the trial court erred in not charging the jury on the law of multiple causation.  Bethards requested the multiple causation charge in relation to his negligence claim, which was dismissed on directed verdict.   The only issue that went to the jury was Bethards breach of warranty claim, and it would have been error for the trial court to charge the law of multiple causation when it was inapplicable to the issue presented to the jury.  See Miller v. Schmid Labs., Inc., 307 S.C. 140, 143, 414 S.E.2d 126, 127 (1992) (holding it is reversible error to chare a principle of
law as governing a case when such principle is inapplicable to the issues on trial).  Accordingly, we find no abuse of discretion in the trial courts refusal to charge multiple causation.  
Next, Bethards claims the trial court erred in failing to charge the jury that a manufacturers disclaimers in a limited warranty must be communicated to the buyer; otherwise, the disclaimers are ineffective because they do not form a part of the agreement.  However, the trial courts charge on the matter stated [a] disclaimer of implied warranty or a limitation in remedy printed on the label or other document and given to the buyer at the time of the delivery of [the] good is ineffective where its not part of the original agreement unless the parties have agreed upon the disclaimer after the original agreement was made.  When a trial court refuses to charge the jury with a charge whose substance was included in the trial courts instruction, there is no error in refusing the request.  Varnadore v. Nationwide Mut. Ins. Co., 289 S.C. 155, 160, 345 S.E.2d 711, 715 (1986).  The requested charge was encompassed by the charge the trial court gave because it is clear that Bethards could not have agreed to the disclaimer unless it was communicated to him.  Therefore, the trial court did not err in failing to give this charge.
 4.       Prejudice from Directed Verdict
Bethards claims he should be granted a new trial because the trial courts erroneous directed verdict for Tenny was prejudicial to his remaining claim against Weather Shield.  This issue was not raise to or ruled upon by the trial court.  Thus it is not preserved for appellate review.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding an issue must be raised to and ruled upon by the trial court to be preserved for appeal).    
D.  Denial of Directed Verdict
Bethards maintains the trial court erred by failing to grant his motion for a directed verdict on his claim of breach of the implied warranty of merchantability against Weather Shield.  He also contends the trial court erred in failing to direct a verdict in his favor because Weather Shield failed to present evidence of its affirmative defense that the limited written warranty and its explicit disclaimers were applicable to Bethards.  He asserts: (1) the written warranty was never delivered to him, and therefore, was not applicable; (2) the warranty failed its essential purpose; (3) the warranty was ambiguous and misleading; and (4) the limits on remedies provided by the warranty are void.  We disagree.
When reviewing a motion for directed verdict, this court must consider all evidence in the light most favorable to the nonmoving party, and may only reverse a jurys verdict if the factual findings implicit within it are contrary to the only reasonable inference from the evidence. 
Maher v. Titex Corp., 331 S.C. 371, 376, 500 S.E.2d 204, 207 (Ct. App. 1998) (citation omitted).  On appeal from the denial of a motion for directed verdict, the appellate court may only reverse if there is no evidence to support the trial courts ruling.   S.C. Prop. and Cas. Guar. Assn v. Yensen, 345 S.C. 512, 521, 548 S.E.2d 880, 885 (Ct. App. 2001). If the evidence yields more than one inference, the motion for directed verdict should be denied.  Garrett v. Locke, 309 S.C. 94, 98, 419 S.E.2d 842, 845 (Ct. App. 1992).
1.      Breach of the Implied Warranty of Merchantability Claim 
Bethards argues the evidence presented at trial only supports the inference that Weather Shield breached the implied warranty of merchantability.  We disagree.
According to section 36-2-314(1) of the South Carolina Code Annotated (2003), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  In order for the goods to be merchantable, they must be at least such as:

(a) pass without objection in the trade under the contract description;  and 
(b) in the case of fungible goods, are of fair average quality within the description;  and 
(c) are fit for the ordinary purposes for which such goods are used;  and 
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;  and 
(e) are adequately contained, packaged, and labeled as the agreement may require. 

S.C. Code Ann. § 36-2-314(2) (2003).
After reviewing the record, we find the trial court properly allowed the jury to decide whether Weather Shield breached the implied warranty of merchantability because the evidence supported more than one reasonable inference.  Although Bethards correctly contends Weather Shields representative testified he could not exclude product failure as the cause of several rotten window sashes, this testimony does not constitute an admission by Weather Shield that its product was defective.  Drake also stated that the damage to the rotten windows was more likely caused by failing to keep the windows locked or closed during rainstorms.  Moreover, taking the evidence in the light most favorable to Weather Shield, the record contained additional evidence from which the jury could have determined that Weather Shield did not breach the warranty or that the water damage was not the result of any breach by Weather Shield.  Weather Shield presented testimony that the water damage could have been caused by faulty installation of the windows and doors.  Therefore, we find no error in the trial courts ruling.    
2.  Enforceability of the Limited Warranty
a.      Delivery 
Bethards argues the disclaimers contained in Weather Shields limited warranty are inapplicable to the instant action because the warranty was not communicated to him. Section 36-2-316(2) of the South Carolina Code Annotated (2003) allows a seller of goods to contractually modify or limit any implied warranty, provided, the exclusion must be by a writing and conspicuous.  Evidence was presented at trial that Weather Shields limited warranty information was on the windows when they were delivered to the home.  Bethards testified he saw the sticker on the window.  When taken in the light most favorable to Weather Shield, the nonmoving party, there is some evidence to support that the limited warranty was communicated in writing to Bethards.  Therefore, the trial court did not err in falling to grant Bethards motion for a directed verdict.
 b.       Failure of Essential Purpose
Bethards claims the trial court erred in failing to grant a directed verdict to him on the issue of whether Weather Shields limited warranty fails of its essential purpose.  Weather Shields limited warranty provides that Weather Shields obligation under this Limited Warranty and Adjustment Policy shall be limited to, at its option and expense, its repair of or provision of a comparable new Weather Shield replacement part for any part which Weather Shield determines to be covered by this Limited Warranty and Adjustment Policy.  Bethards contends Weather Shield failed to replace or repair the defective product as the limited warranty provides and thus, the limited warranty should be considered void.  However, evidence as to whether Weather Shield even knew of the products being defective conflicted.  The evidence shows Bethards contacted Southern Lumber, not Weather Shield, regarding the problems with the windows and sliding doors.  Although Bethards testified someone came to repair his doors and windows, he was unsure if it was a representative from Southern Lumber or Weather Shield.  Therefore, given that Weather Shield may not have known of the defective product until it was named a party to this lawsuit, the trial court was correct in not granting Bethards motion for a directed verdict on this issue.
 c.       Ambiguity
Bethards argues he was entitled to a direct verdict because the limited warranty was misleading.  Bethards argues that the term weather exposure in the warranty was undefined and therefore, is ambiguous.  Bethards contends because the languages purpose is to exclude the implied warranty of merchantability, the ambiguity must be resolved in his favor.  S.C. Code Ann. § 36-2-316(2).  In the warranty, under the heading of Misuse, Abuse, Etc., is the statement [t]his warranty does not cover glass breakage or distortion or any other failures or operating difficulties . . . due to exposure to the elements.  Reading the clause alongside the heading, it is clear that the limitation applies only where there has been a misuse of the windows, not in normal use of the windows.  See Holden v. Alice Mfg., Inc., 317 S.C. 215, 221, 452 S.E.2d 628, 631 (Ct. App. 1994) ([I]n determining the intent and purport of a contract, the court should not look solely to one clause read in isolation from the rest of the document; rather, it should consider the contents of the whole instrument.).  Further, Weather Shield never attempted to disclaim any implied warranty obligation to Bethards under this clause.  Weather Shield contends it was never even contacted by Bethards about the windows.  Therefore, even if the clause is interpreted against Weather Shield, it does not entitle Bethards to a directed verdict because the evidence supports more than one reasonable inference.  Accordingly, the trial court correctly submitted the issue to the jury.    
 d.       Limits on Remedies
Bethards claims section 36-2-719(3) of the South Carolina Code Ann. (2003) provides that a limitation on a remedy for a consumer product is presumed unconscionable unless proven otherwise by the manufacturer.  However, the section in question actually provides [c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.  S.C. Code Ann. § 36-2-719(3) (2003) (emphasis added).  Because the injury at issue is not to the person, the limitation on the remedy is not prima facie unconscionable.  Therefore, the trial court properly gave the task of determining whether the limitation of remedies was unconscionable to the jury, along with a charge stating the test for determining the unconscionability of limitations of remedies.  The trial court did not err in failing to grant a directed verdict for Bethards on this basis.
CONCLUSION
We find the trial court did not err in granting directed verdicts for Synco and Weather Shield on Bethards negligence claims because the statute of limitations barred the claims. Bethards claim that the trial courts legal and evidentiary errors entitle him to a new trial is without merit.  Finally, the trial court correctly denied Bethards motion for a directed verdict on his remaining claim of breach of the implied warranty of merchantability because the evidence was sufficient to warrant a question for the jury.  Accordingly, the decision of the trial court is
 AFFIRMED.
BEATTY, SHORT, and WILLIAMS, JJ., concur.