LOCKEMY, C.J.:
*220 **289 William Crenshaw appeals the trial court's order granting Erskine College's (Erskine) motion for judgment notwithstanding the verdict (JNOV). We reverse.
FACTS/PROCEDURAL BACKGROUND
Crenshaw was a tenured professor at Erskine. On September 24, 2010, a student in Crenshaw's English class who had fallen in an athletic team practice earlier that morning became disoriented and lethargic. Crenshaw-a former paramedic-called Robyn Agnew, Erskine's Vice President for Student Services, to inform her of the situation and requested she call an ambulance. After the ambulance arrived, Crenshaw and **290 members of Erskine's athletic training staff disagreed over whether the student should be transported to the hospital.
Following the incident, Crenshaw and Erskine's Head Athletic Trainer, Adam Weyer, engaged in an email exchange. Crenshaw suggested Erskine scrutinize the athletic department's protocol for handling emergency medical situations. Crenshaw asserted the athletic department's protocol of having student athletes report to athletic trainers before they see doctors endangers students. Crenshaw further alleged the trainers erred in delaying emergency medical transport for the injured student in his class. Weyer accused Crenshaw of "taking the matter into his own hands" and not following athletic department concussion protocol of contacting athletic training personnel before calling for an ambulance.
As a result of the ambulance incident and its aftermath, Weyer filed a grievance against Crenshaw. Weyer accused Crenshaw of violating athletic department protocol and making slanderous remarks both online and in class regarding the athletic training staff. Weyer's grievance was cosigned by Mark Peeler, Erskine's Athletic Director. Gid Alston, the Chair of Erskine's Department of Health and Human Performance, also filed a grievance against Crenshaw. Alston accused Crenshaw of potentially harming the image of the athletic training program by slandering Erskine's athletic trainers.
The grievances were forwarded to Erskine's faculty grievance committee to mediate the dispute. Following a meeting, the committee determined it could not formulate a mediation plan and sent the grievances to Erskine Dean Brad Christie. Weyer, Peeler, and Alston declined Christie's offer to mediate, and the matter was forwarded to Erskine President David Norman for adjudication.
In November 2010, Norman appointed a special faculty grievance committee to help adjudicate the matter. Norman requested the committee assess Crenshaw's behavior in handling the emergency situation and his professionalism and collegiality during and following the situation. Crenshaw gave a statement to the committee, denied the allegations against him, and agreed to answer any questions. Following two meetings, the committee determined it was unable to help **291 resolve the situation and returned the matter to Norman. Thereafter, Norman began the process of terminating Crenshaw's employment based on (1) Crenshaw's conduct during and after the ambulance incident[1] ; (2) Crenshaw's "obstructionist actions" before the grievance committee[2] ; and (3) Crenshaw's disparaging remarks about Erskine on his blog[3] . *221 Pursuant to Erskine's Faculty Manual (the Manual), the procedure for terminating a tenured faculty member's employment for cause begins with "Preliminary Proceedings." Preliminary proceedings require the President to seek to resolve the matter with the faculty member in private and states if the matter is not resolved by mutual consent then the President will formulate a statement describing the grounds for dismissal.
The second step in the procedure is titled "Formal Proceedings." The formal proceedings step states:
The President will inform the tenured faculty member in writing of the dismissal and the grounds for it. The President will also advise the tenured faculty member of the right to a hearing before a faculty committee and will indicate the time and place of the hearing. In fixing the time and place of the hearing, the President will allow sufficient time for the tenured faculty member to prepare a defense. The President will inform the tenured faculty member of the procedural standards set forth here.
The tenured faculty member will reply in writing to the President stating whether a hearing is desired, and the **292 reply shall be not less than two weeks before the date set for the hearing.
Crenshaw acknowledged these procedures were part of the Manual, which constitutes the contract at issue.
Crenshaw proceeded to teach during the spring 2011 semester. In August 2011, Norman initiated the for cause termination process in the Manual. Norman wrote a letter to Crenshaw on August 5, 2011, introducing the preliminary proceedings. Norman then met with Crenshaw on August 6, 2011, in an attempt to resolve the matter. Norman began the meeting by reading the August 5 letter to Crenshaw, which stated Norman's hope they could resolve the issues by mutual consent, but if they could not, then Norman would provide a statement describing the grounds for Crenshaw's dismissal. Norman offered Crenshaw conditions, consisting of three sets of apologies, which if met would allow him to remain employed. Crenshaw and Norman also discussed severance pay in exchange for Crenshaw's early retirement. Crenshaw and Norman agreed Crenshaw would discuss the early retirement option with his wife and make a decision by 5:00 p.m. on August 8, 2011. The meeting ended with Norman outlining Crenshaw's three options: (1) agree to apologize; (2) go to step two, i.e., formal proceedings for termination at which Norman would outline the grounds for termination; or (3) accept the early retirement offer.
Just before the agreed-upon deadline to decide between the three options, Crenshaw informed Norman that he and his attorney were willing to discuss the issue of his early retirement. Norman was unsure whether this response was a yes or no but treated it as acceptance of the offer. He responded he would draft an agreement for the early retirement and a proposed announcement for Crenshaw's approval to prompt a commitment from Crenshaw if he was in fact serious about retiring.
The next day, Norman sent Crenshaw a draft agreement for an early retirement payment and a proposed announcement of Crenshaw's retirement. Crenshaw responded that announcing his retirement was premature because he was still considering the severance agreement, which provided up to twenty-one days to consider. Norman responded that Crenshaw could **293 indeed take the entire twenty-one day period to consider the early retirement agreement. However, because Norman had already informed Crenshaw in the August 6 meeting Crenshaw would not be teaching that semester, he provided Crenshaw with an alternative announcement to Erskine's faculty and staff that Crenshaw would not be teaching in the fall and that he and Norman were discussing his future with Erskine. Crenshaw responded that he disagreed with his removal from the classroom for the semester. Crenshaw's response also confirmed he had not yet made a decision on the options he agreed to in the August 6, 2011 meeting. *222 Because Crenshaw failed to choose one of the agreed-upon options by the fourth day after the deadline, Norman moved to formal proceedings and sent Crenshaw a statement of the grounds for his dismissal on August 12, 2011. Norman's letter informed Crenshaw of his right to a hearing, stating:
You have a right under College policy to a full hearing before a faculty committee. Unless you waive your right to a hearing, it shall be held on August 29th at 9 [a.m.] in the Chestnut Room. This schedule is subject to adjustment upon reasonable request. As also stated in the handbook, you will reply to this letter in writing, stating whether this hearing is desired. This reply shall not be less than two weeks before the date set for the hearing.
Crenshaw did not request a hearing. Norman never appointed a faculty committee for the termination hearing but waited for Crenshaw at the appointed time and place for the scheduled hearing. Crenshaw did not appear.
While the formal proceedings were ongoing, the timeline for the offer of early retirement was also running. The original twenty-one day consideration period expired on August 30, 2011, without an acceptance or rejection of the offer by Crenshaw. Norman extended Crenshaw's time to respond to the early retirement offer by six days with a new deadline of September 5, 2011, and communicated this to Crenshaw's attorney. Crenshaw did not respond to the early retirement offer by September 5, 2011. After the extended deadline to accept the early retirement offer expired, and because Crenshaw had not made a timely demand for the hearing, Norman terminated Crenshaw's employment on September 7, 2011.
**294 On June 6, 2012, Crenshaw filed a complaint against Erskine and Norman alleging (1) wrongful discharge, (2) breach of contract, and (3) intentional infliction of emotional distress. Erskine and Norman subsequently filed an answer denying Crenshaw's allegations.
On March 28, 2014, Erskine and Norman filed a motion for summary judgment on all of Crenshaw's claims. The trial court denied the motion. Prior to trial, Erskine and Norman filed a second motion for summary judgment on Crenshaw's wrongful discharge claim. During arguments on the motion, Crenshaw conceded his wrongful discharge claim was the same as the breach of contract claim and the two claims were merged.
A jury trial was held June 8 through 11, 2015. At the close of Crenshaw's case, Erskine and Norman moved for directed verdicts on all of Crenshaw's claims. The trial court granted the directed verdict motions on all claims as to Norman but denied the motions as to Erskine. At the close of Erskine's case, Erskine renewed its directed verdict motions, and the court granted Erskine a directed verdict as to the intentional infliction of emotional distress claim. Thereafter, the breach of contract claim was submitted to the jury. The jury, by special verdict form, found (1) Crenshaw did not breach his obligation under the contract and (2) Erskine did breach its obligation under the contract. The jury awarded Crenshaw $600,000 in damages.
Following the verdict, Erskine filed a motion for JNOV and in the alternative for a new trial. Following a hearing, the trial court granted Erskine a new trial. Erskine subsequently filed a Rule 59(e), SCRCP, motion seeking clarification as to whether the court had denied the JNOV motion in order to preserve the issue for appeal. Crenshaw also filed a Rule 59(e) motion seeking to have the jury's verdict reinstated.
On August 24, 2015, the trial court issued an order (1) vacating its prior order granting a new trial and (2) granting Erskine's JNOV motion. The court found Crenshaw failed to comply with the terms of the contract and request a hearing; therefore, he could not recover on a breach of contract claim in which he failed to fulfill the obligations of the contract and **295 consequently breached the contract. The court denied Crenshaw's Rule 59(e), SCRCP, motion. Crenshaw appeals.
STANDARD OF REVIEW
When reviewing the trial court's ruling on a directed verdict or JNOV motion, this court must apply the same standard as the trial court "by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party."
*223 Elam v. S.C. Dep't of Transp. , 361 S.C. 9, 27-28, 602 S.E.2d 772, 782 (2004). The trial court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt. Strange v. S.C. Dep't of Highways & Pub. Transp. , 314 S.C. 427, 429-30, 445 S.E.2d 439, 440 (1994). Moreover, "[a] motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict." Gastineau v. Murphy , 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998). In deciding such motions, "neither the trial court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence." Welch v. Epstein , 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct. App. 2000). This court will reverse the trial court's ruling only if no evidence supports the ruling below. RFT Mgmt. Co. v. Tinsley & Adams LLP , 399 S.C. 322, 332, 732 S.E.2d 166, 171 (2012).
LAW/ANALYSIS
I. Verdict Form
Crenshaw argues the trial court erred in granting Erskine's JNOV motion. Crenshaw asserts a jury verdict based on a special verdict form precludes a grant of JNOV. We find this issue unpreserved.
Although Crenshaw maintains he asked the trial court to give deference to the jury's verdict, he did not specifically assert the use of a special verdict form precluded the grant of JNOV. Accordingly, this argument is not preserved for our review. See Wilder Corp. v. Wilke , 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); id. ("[A]n objection must be sufficiently specific to **296 inform the trial court of the point being urged by the objector.").
Even assuming this issue was preserved, we note our court rules and case law do not provide that the use of a special verdict form precludes the grant of JNOV. See Rule 50(b), SCRCP ("Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. A party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict ....");
Smith v. Ridgeway Chemicals, Inc. , 302 S.C. 303, 305, 395 S.E.2d 742, 743 (Ct. App. 1990) ("[A JNOV] motion is available to one suffering an adverse ruling of the jury only when the same issues were submitted to the judge at the directed verdict stage.").
II. Implied Covenant of Good Faith and Fair Dealing
Crenshaw argues Erskine breached the implied covenant of good faith and fair dealing by (1) suspending Crenshaw; (2) failing to identify any grounds for terminating Crenshaw during the August 6th meeting; (3) failing to comply with the preliminary proceedings provision in the Manual; (4) terminating the preliminary proceedings prior to the expiration of the 21-day consideration period for the offer of early retirement; (5) failing to comply with the formal proceedings; (6) failing to give Crenshaw a meaningful opportunity for a fair hearing; and (7) failing to give Crenshaw sufficient time to prepare a defense. We agree.
"There exists in every contract an implied covenant of good faith and fair dealing." Adams v. G.J. Creel & Sons, Inc. , 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995).
The Manual provides "[t]he President will ... advise the tenured faculty member of the right to a hearing before a faculty committee and will indicate the time and place of the hearing .... The tenured faculty member will reply in writing **297 to the President stating whether a hearing is desired ...." This requirement was also specified in the statement of grounds for dismissal and its cover email sent by Norman to Crenshaw. The letter outlining the grounds for dismissal stated:
You have a right under College policy to a full hearing before a faculty committee.
*224 Unless you waive your right to a hearing, it shall be held on August 29th at 9 a.m. in the Chestnut Room. This schedule is subject to adjustment upon reasonable request. As also stated in the handbook, you will reply to this letter in writing, stating whether this hearing is desired. This reply shall not be less than two weeks before the date set for the hearing.
The jury, by special verdict form, was asked (1) whether Crenshaw breached his obligation under the contract and (2) whether Erskine breached its obligation under the contract. The jury found Crenshaw did not breach his obligation and Erskine did breach its obligation. Thereafter, the trial court granted Erskine's JNOV motion, finding Crenshaw failed to comply with the terms of the contract and request a hearing; therefore, he could not recover on a breach of contract claim where he failed to fulfill the obligations of the contract and consequently breached the contract.
We find the trial court erred in granting Erskine's JNOV motion. By submitting the special verdict form to the jury, without objection, the parties agreed it was a question of fact as to whether the contract was breached. The jury, as fact finders, could have found the language in the Manual and letter were confusing as to whether Crenshaw was required to specifically request or waive a hearing that had already been set. The jury could have also determined Crenshaw did not breach his obligations to Erskine because the offer for early retirement was still pending when Crenshaw received Norman's letter and remained pending until the day after the scheduled hearing. Finally, even assuming the contract required a reply from Crenshaw, the jury could have determined Crenshaw's breach was immaterial. Accordingly, we reverse the grant of JNOV.[4] See **298 Strange , 314 S.C. at 429-30, 445 S.E.2d at 440 (holding the trial court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt); Gastineau , 331 S.C. at 568, 503 S.E.2d at 713 ("A motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict.").
CONCLUSION
The trial court's order granting Erskine's motion for JNOV is
REVERSED.
WILLIAMS and KONDUROS, JJ., concur.

Norman found Crenshaw attempted to assert control over a situation in which his authority was subordinate to the EMS personnel and Christie.

Norman found Crenshaw exhibited "bullying behavior" and "contempt" for the committee. Norman noted Crenshaw's actions before the committee evidenced a pattern of refusing to respect the legitimate authority of the committee, and a volatility that created a hostile working environment.

Norman found Crenshaw demonstrated his disloyalty to Erskine by posting the following statement on his blog:
I think this site does accomplish three things. First ... This is a means to an end. The end are [sic] the other two accomplishments: second, people are encouraged to quit donating to Erskine and to quit sending their kids until all this is straightened up.

Erskine argues Crenshaw's argument regarding a breach of the implied duty of good faith and fair dealing is not preserved because he failed to raise it in either (1) his response to Erskine's motion, (2) his arguments at the hearing on Erskine's motion, or (3) his motion to alter or amend the order granting Erskine a new trial. Crenshaw asserts he argued throughout the trial and during the post-trial proceedings that Erskine violated its duty of good faith to Crenshaw. We find Crenshaw's argument is preserved. While he did not explicitly cite case law regarding the implied covenant of good faith and fair dealing, Crenshaw did assert at trial Erskine violated the duty of good faith by jumping between the stages of termination: "[I]t shows a lack of good faith, the fact that they are jumbling these stages and give him two days to respond or three, I guess, less than three days, weekend days."